UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH KEMP, )<br>On behalf of himself and all others )<br>similarly situated, and )<br>CHRISTINE KEMP, )<br>               Plaintiffs )<br>)<br>v.                                      )<br>)<br>GANICK, O'BRIEN & SARIN, Attorneys at Law, )<br>LAWRENCE E. O'BRIEN, JR., d/b/a )<br>GANICK, O'BRIEN & SARIN, Attorneys at Law, )<br>And DOES 1-5, )<br>               Defendants           ) | Civil No. 05-11516-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF KENNETH KEMP'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Kenneth Kemp submits this memorandum of law in support of his motion for partial summary judgment pursuant to Fed. R. Civ. P. 56.

**Introduction**

Plaintiffs filed this action seeking damages and injunctive relief as a result of allegedly unlawful conduct engaged in by the defendant law firm Ganick, O'Brien & Sarin ("GOS") in attempting to collect a consumer credit card debt allegedly owed by plaintiff Kenneth Kemp. Plaintiffs have asserted claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692a *et seq.* ("FDCPA") and the Massachusetts Consumer Protection Act, G.L. c. 93A.

Plaintiff Kenneth Kemp now seeks summary judgment as to liability against Lawrence E. O'Brien, Jr., d/b/a Ganick, O'Brien & Sarin, attorneys at law, solely on his

individual claim asserted in Count VIII of the Second Amended Complaint.[1]  That claim alleges that certain language in GOS's standard initial demand letter – which GOS admits sending to plaintiff on November 17, 2003 - was deceptive in violation of G.L. c. 93A, section 2.  The language in question reads as follows:

> Therefore, unless we hear from you within 30 days of the date of this letter, or you make satisfactory arrangements to pay this claim, *we shall institute legal proceedings and, pending court approval, may make such attachment of your property, bank account or wages, as shall be necessary to satisfy the judgment and execution which our client expects to obtain against you.*

Ex. A (emphases added).[2]  Plaintiff contends that this language conveys, or has the tendency to convey, the message that plaintiff's wages could be attached by GOS prior to a judgment being entered against him, a remedy not available to creditors under Massachusetts law.  Consequently, as shown below, the language was unlawfully deceptive.

## **Argument**

Summary judgment shall be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).*  If the moving party carries its burden, then in order to avoid summary judgment the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e). See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).   Thus, summary judgment is

---

[1] It is undisputed that the law firm is owned by O'Brien and operated by him as a sole proprietorship. Second Amended Complaint, ¶3;  Answer to Second Amended Complaint, ¶3; O'Brien Depo, p. 5 (Quat Aff., Ex. M).

[2] In this memorandum, all references to exhibits are to those appended to the Affidavit of Kenneth D. Quat, Esquire, filed herewith.

warranted unless the party opposing the motion demonstrates "that a reasonable jury could return a verdict for [that] party." *New Haven Savings Bank v. Follins,* 431 F.Supp.2d 183, 189 (D. Mass. 2006)(citations omitted). As described by one court: "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). Thus, an opposition which amounts to "nothing more than an invitation [for the jury] to speculate" will not defeat a motion for summary judgment. *Id.,* quoting *Feliciano de la Cruz v. El Conquistdor Resort and Country Club,* 218 F.3d 1, 9 (1st Cir. 2000). Otherwise stated, "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.,* quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### I. MASSACHUSETTS LAW DOES NOT PERMIT THE PRE-JUDGMENT ATTACHMENT OF WAGES.

Massachusetts General Laws Chapter 246, section 32, provides in pertinent part as follows:

> G.L. c. 246, §32: Claims not attachable by trustee process.
>
> No person shall be adjudged a trustee in the following cases:
> . . . .
> Eighth, By reason of money or credits due for the wages of personal labor or services of the defendant, unless such attachment is made in an action brought upon a judgment . . . .

The statute has not been amended since 1982, and is mirrored by Mass. R. Civ. P. 4.2(a): "no person shall be adjudged trustee for any amount due from him to the defendant for wages or salary for personal labor or services of the defendant except on a claim that has

3

first been reduced to judgment or otherwise authorized by law. . . ." At their depositions, debt collection attorneys employed by defendant did not dispute this characterization of Massachusetts law. For example, Attorney David Book testified: "[a]s far as I am aware, you cannot do a prejudgment attachment of a debtor's wages." Ex. B. And, when asked whether he knew "whether or not Massachusetts law provides for a prejudgment attachment of wages," defendant O'Brien – the owner of GOS - testified: "I don't know of any provision that allows that." Ex. C.

## II. DEFENDANT'S LETTER OF NOVEMBER 17, 2003 WAS DECEPTIVE AS A MATTER OF LAW IN VIOLATION OF G.L. c. 93A, §2.

Massachusetts General Laws Chapter 93A, section 2, provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Section 9 of the statute grants a private right of action to "any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act, or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . "[3]

The overriding purpose behind the enactment of chapter 93A was "to encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices." *Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 54 (1st Cir. 1998). The statute created "broad new rights, forbidding conduct not previously unlawful under the common law of contract and tort or under any prior statute." *Dodd v.*

---

[3] Section 11 is reserved for claims brought by persons "engage[d] in the conduct of any trade or commerce." Section 9 is therefore the "consumer" arm of chapter 93A.

  Plaintiff's affidavit makes clear that this is not a section 11 case, because the credit card account which defendant was seeking to collect was used only for personal, family, or household purposes, such as paying for groceries, home furnishings, family recreational and entertainment expenses, and similar items. *See* Affidavit of Kenneth Kemp, ¶3.

4

*Commercial Union Insurance Company*, 373 Mass. 72, 78 (1977).  Thus, "[a] claim under Chapter 93A rises or falls on its own merit," *Patricia Kennedy & Co. v. Zam-Cul Enters., Inc.,* 830 F.Supp. 53, 59 (D.Mass. 1993), and conduct which is otherwise lawful can nevertheless violate the statute.  *See*, e.g., *Schubach v. Household Finance Corp.,* 375 Mass. 133 (1978) (claim alleging forum abuse stated valid cause of action under chapter 93A even though venue of the challenged proceeding did not violate applicable statute).

Conduct is deceptive under chapter 93A if it has "a tendency to deceive."  *Leardi v. Brown*, 394 Mass. 151, 156 (1985)(citation omitted).  Otherwise stated, the statute is violated by a misrepresentation which "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted."  *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 396 (2004).  Thus, the question of whether an act or practice is deceptive within the meaning of c. 93A is "to be answered on an objective basis."  *Id.*, at 394 (citing *Lowell Gas Co. v. Attorney Gen.*, 377 Mass. 37, 51 (1979) and *Commonwealth v. AmCan Enters., Inc.*, 47 Mass. App. Ct. 330, 335 (1999)).  As the Court emphasized in *Aspinall*: "[i]n determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public."  *Id.* (citations and internal quotation marks omitted).  Thus, deception can occur, and chapter 93A, §2 can be violated, even if the challenged statement is not totally false:  "[it] may consist of a half truth, or may even be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information."  *Id*. at 395 (citations omitted).

Despite the broad reach of chapter 93A, the Massachusetts Legislature has made clear that protecting consumers from deceptive debt collection practices is a particular priority, as shown by the enactment of G.L. c. 93, §49, which reads: "No one who is a creditor or an attorney for a creditor . . . shall collect or attempt to collect such [consumer] debt in an unfair, deceptive or unreasonable manner."  In addition, this law specifically prohibits the making of "threats of any action which the creditor in the usual course of business does not in fact take," and decrees: "Failure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A."

While deceptiveness is often an issue of fact, by no means is this always the case:

> [I]n some cases, whether a representation is deceptive within the meaning of c. 93A, §2(a)  may be determined as a matter of law.  In such cases . . .  the deceptive meaning can be determined "through an examination of the representation, including an evaluation of such factors as the entire [document], the juxtaposition of various phrases in the document, the nature of the claim, and the nature of the transaction."

*Amcan Enters.,* 47 Mass.App.Ct. at 336, quoting *Assoc., Inc.,* 103 F.T.C. 110, 166(1984). *See,* also, *Leardi* (upholding summary judgment entered on chapter 93A claim); *Aspinall*, 442 Mass. at 402 (plaintiffs' allegations sufficient to establish that product "was deceptively advertised as a matter of law"); *Anthony's Pier 4 v. HBC Assoc.,* 411 Mass. 451, 474-475 (1991)(conduct "in disregard of known contractual arrangements" violated chapter 93A as a matter of law); *Guenard v. Burke,* 387 Mass. 802, 809 (1982) (attorney's reliance on unenforceable fee agreement constituted chapter 93A violation as a matter of law).

In view of the above principles, it is apparent that the language utilized by

6

defendant in the November 17, 2003 letter is deceptive as a matter of law. Reduced to its essence, it states that upon commencing legal action GOS "may make such attachment of . . . your wages . . . as shall be necessary to satisfy the judgment and execution which our client expects to obtain against you." It cannot be seriously disputed that this conveys the distinct message that GOS could seek a pre-judgment wage attachment against plaintiff, and that such an attachment could be obtained (with court approval). Not only does the "attachment" language follow immediately upon the phrase "institution of legal proceedings," but, moreover, the remedy is described as one which can be employed for the purpose of satisfying a judgment which GOS's client "expects" to recover, i.e., in the future. In addition, the reference to wages is included in the same word grouping as references to property and bank accounts - "*your property, bank account or wages*" - but, unlike wages, property and bank accounts *are* subject to attachment prior to judgment. *See* Mass. R. Civ. P. 4.1; Mass. R. Civ. P. 4.2. In view of the foregoing, it is not at all surprising that plaintiff took from the letter an unlawful message: "Reading this, I was under the impression that they were going to be able to attach my house, my wages and bank accounts prior to getting a judgment." Ex. D.

Tellingly, shortly after being served in this lawsuit GOS changed its demand letter to omit the deceptive language. The revised letter states:

> we shall institute legal proceedings and, pending court approval, may make such attachment of your property as shall be necessary to satisfy the judgment and execution, which our client expects to obtain against you.

Ex. E.[4] While GOS may argue that the Court should ignore the revised letter because it

---

[4] According to Attorney O'Brien, the revision was made "[a]s a result of this lawsuit brought by your [plaintiffs' counsel's] office. . . . " Ex. F.

7

constitutes a "subsequent remedial measure" inadmissible in evidence under Fed. R. Evid. 407, the letter is in fact fully admissible – as the Rule permits – "for another purpose." In particularly, it will be admissible to impeach the credibility of defendants and Kevin McCaughey. Writing on behalf of the defendants in response to plaintiffs' chapter 93A demand letters (Exs. G and H), McCaughey took the hard-line position that "the letter, on its face, is in no way unfair or deceptive, as the language is clear and accurate. " Exhibit I. The admissibility of subsequent remedial measures for impeachment purposes is one of the express exceptions cited in Rule 407, and it applies with particular force where a party – such as defendants here – has taken an absolute position on an issue of fact. *See,* e.g., *Petree v. Victor Fluid power, Inc.,* 887 F.2d 34, 38-41 (3rd Cir. 1989)(where defense testimony was unequivocal that use of equipment carried no risk, testimony regarding the subsequent placement of a warning label held admissible); *American Airlines, Inc. v. United States,* 418 F.2d 180, 196 (5th Cir. 1969)(defense testimony that part was perfectly safe and there was no reason to change it could be impeached with testimony regarding subsequent modifications).[5]

Defendant's letter also violates chapter 93A because it violates the FDCPA. A regulation promulgated by the Massachusetts Attorney General pursuant to G.L. c. 93A, §2(c) provides that a violation of the Federal Consumer Credit Protection Act – of which the FDCPA is a part - constitutes a *per se* violation of G.L. c. 93A, §2. 940 CMR 3.16.[6]

---

[5] McCaughey also made statements at his deposition which are seriously called into question by the revised letter. For example, he testified that his "interpretation" of the challenged language in the original letter was: "following the entry of the judgment, in order to satisfy that judgment, pending court approval, there may be attachment of wages." Ex. J. It is plain, however, that no language limiting the possibility of a wage attachment to "following the entry of the judgment" exists in the letter itself. *See* Ex. A.

[6] The regulation reads in pertinent part:

> Without limiting the scope of any other rule, regulation or

This regulation "has the force of law." *Brennan v. Carvel Corp.,* 929 F.2d 801, 812 (1st Cir. 1991), *quoting Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 775 (1980). And, the FDCPA proscribes the very kind of conduct at issue here:

> 15 U.S.C. §1692e. False or misleading representations.
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . . . .
> *(4) The representation or implication that nonpayment of any debt will result in the . . . garnishment [or] attachment of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.*
>
> *(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.*

(emphases added). As the foregoing discussion demonstrates, since an attempt to attach plaintiff's wages prior to judgment would have violated Massachusetts law, defendant's letter constituted *per se* violations of sections(4) and (5) of section 1692e. These sub-sections were also violated because defendant never intended to try to attach plaintiff's wages pre-judgment. Attorney David Book, who was the attorney of record in the collection suit filed against plaintiff, acknowledged that in the course of his 10 years of practicing law in Massachusetts he had never moved for a pre-judgment wage attachment, and that doing so would have been unlawful. Ex. B.[7]

---

> Statute, an act or practice is a violation of M.G.L. c. 93A, §2 if:
> . . . . .
> (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, §2.

[7] The FDCPA only applies to "debt collectors," defined as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6). The term "debt" is defined by the Act as an obligation arising from a transaction

Even assuming, *arguendo,* that the challenged language does not convey the clear message that GOS could lawfully seek a pre-judgment attachment of wages, the language still violated section 2 as a matter of law because, at a minimum, it clearly has the "tendency" to convey this message,[8] or is ambiguous, i.e., it "permit[s] more than one rational interpretation." *Insituform Technologies, Inc. v. American Home Assurance Co.,* 364 F.Supp.2d 3, 5 (D.Mass. 2005).

In Russell v. Equifax, A.R.S., 74 F.3d 30 (2nd Cir. 1996), a collection agency sent plaintiff a dunning letter stating that his account had been placed for "immediate collection." However, the letter also contained the notice required by 15 U.S.C. §1692(g) indicating that the debtor had 30 days to dispute the debt and/or request verification of same. The Court found the letter to be unlawfully deceptive "[b]ecause [it] was reasonably susceptible to an inaccurate reading," *id.* at 35, explaining that the language in question "advances a message that is open to an inaccurate yet reasonable interpretation by the consumer, and is therefore deceptive as a matter of law." *Id.* at 36.

Similarly, in Sparkman v. Zwicker & Associates, P.C., 374 F.Supp. 2d 293 (E.D.N.Y. 2005), the defendant law firm sent a dunning letter to plaintiff which stated, first, that if plaintiff did not pay or make arrangements to pay the debt "this office will conduct a review of your account," thus implying that "as of the date of the letter no Zwicker attorney had reviewed plaintiff's account." *Id.* at 301. However, this was

---

engaged in "primarily for personal, family, or household purposes." 15 U.S.C. §1692a(5). Both of these definitions are satisfied here. First, GOS has admitted that in the 4-year period preceding the filing of this action it attempted to collect at least 2,452 consumer debts (Ex. K), which clearly rises to the level of engaging in "regular" collection activity. And, second, Kenneth Kemp has attested in his affidavit that the credit card account which was the subject of GOS's collection efforts against him was used "exclusively" to pay for classic personal, family, and household expenses such as groceries, clothing, and gifts. Affidavit of Kenneth Kemp, ¶3.

[8] *Leardi,* 394 Mass. at 156.

followed by language stating that "the appropriateness of the correspondence was made by an attorney and an attorney did authorize the sending of the letter," suggesting "that a Zwicker attorney did review plaintiff's account prior to the mailing of the Collection Letter." *Id.* at 302.  The Court thus concluded: "with respect to the level of attorney involvement in the collection of plaintiff's debt the Collection Letter may reasonably be read to have two different meanings, only one of which can be accurate.  As a result, it is deceptive as a matter of law." *Id.*

Although the above cases were decided under the FDCPA, they are directly apposite to the case at bar since, as shown, the FDCPA contains a near-identical prohibition against deceptive conduct as that found in G.L. c. 93A, section 2.[9] Moreover, also as noted, a violation of the FDCPA constitutes a violation of G.L. c. 93A, §2 as a matter of law.  *See* discussion *supra* at pp. 8-10.

In sum, it should be apparent that – at a minimum - the demand letter created the "over-all misleading impression" that defendant could lawfully seek a pre-judgment wage attachment against plaintiff.  *Aspinall,* 442 Mass. at 395.  This conclusion becomes inescapable when the suspect portion is contrasted with an example of language which defendant could have chosen to avoid contravening chapter 93A:

> . . . we shall institute legal proceedings and, pending court approval, may make such attachment of your property as shall be necessary to satisfy the judgment which our client expects to recover, and, following entry of judgment, may attach non-exempt wages with court approval.

Accordingly, defendant's demand letter of November 17, 2003 violated G.L. c. 93A, §2 as a matter of law.

---

[9] Title 15, section 1692e declares in no uncertain terms:  "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

11

### III. **PLAINTIFF WAS INJURED WITHIN THE MEANING OF G.L. c. 93A, §9 AS A RESULT OF DEFENDANT'S UNLAWFUL CONDUCT.**

As originally enacted, G.L. c. 93A, §9, granted a right of action only to a consumer who "suffer[ed] any loss of money or property, real or personal" as a result of unfair and/or deceptive conduct. In 1979, the statute was amended to expand the right of action to any person "who has been injured" by such conduct. In several notable and well-reasoned decisions, the Supreme Judicial Court has made clear that, as a result of the 1979 amendment, a person subjected to the kind of deceptive conduct at issue here has – as a matter of law - suffered an injury which is actionable under section 9.

In *Leardi,* the plaintiff tenant filed a class action against his landlord, alleging that certain provisions of his lease agreement violated the state sanitary code and were therefore unfair and deceptive under chapter 93A. Plaintiff's motion for summary judgment was allowed even though he conceded "that no member of the class had ever read, and that the landlord had never attempted to enforce, the offending portions of the lease." *Id.* at 154. In affirming, the Court rejected defendant's argument that the "mere presence" of the offensive terms could not constitute an injury under chapter 93A, explaining:

> According to the *Restatement (Second) of Torts, §*7 (1965), the term "injury" denotes "the invasion of any legally protected interest of another." Moreover, "[t]he most usual form of injury is the infliction of some harm; but there may be injury although no harm is done." *Restatement (Second) of Torts,* §7, comment a (1965). As Professor McCormick has explained, "What the law always requires as a basis for a judgment is not loss or damage, but '*injuria,'* and hence damages are allowed, though there has been no loss or damage."

12

*Id.* at 159-160 (citations omitted).  The Court therefore concluded: "in amending G.L. c. 93A, §9, the Legislature exercised its prerogative to create a legal right, the invasion of which, without more, constitutes an injury."  *Id.* at 160.

This principle was re-affirmed in *Aspinall*.  There, plaintiff moved to certify a class of Massachusetts residents who had purchased Marlboro "Light" Cigarettes, claiming they sustained economic loss by purchasing a product that was falsely advertised as delivering lower tar and nicotine.  Defendant argued that certification was inappropriate because "some smokers of Marlboro Lights did in fact receive 'lowered tar and nicotine,' thus creating "individualized issues of causation and injury . . . [which] would overwhelm any common issues with respect to the defendants' conduct."  *Id.* at 393-394.  Rejecting this position, the Court held that if plaintiffs' allegations were proven, all members of the class sustained the same "per se" injury because defendant's deceptive advertising "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"  *Id.* at 394, quoting *Purity Supreme,* 380 Mass. at 777.  Thus, individual questions of harm, reliance, smoking habits, and subjective motivation in buying the product were completely irrelevant.  *Id.* at 397.  Declaring that "[t]he circumstances in the *Leardi* case . . . were essentially no different from the case before us," the Court explained:

> [T]he deceptive advertising, as alleged by the plaintiffs in this case, if proved, effected a per se injury on consumers who purchased the cigarettes represented to be lower in tar and nicotine.  If follows that, if the violations of G.L. c. 93A alleged by the plaintiffs are proved, all members of the class of purchasers of Marlboro Lights in Massachusetts will have been injured (regardless of whether some smokers actually received lower tar and nicotine).  This is so because all purchased (and presumably, smoked) a product that was deceptively advertised, as a matter of law, because it was

> falsely labeled or, at least, created the over-all misleading impression that all smokers would receive "lowered tar and nicotine.

*Id.* at 402.

Most recently, in *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.,* 445 Mass. 790 (2006), the Court re-affirmed the continuing vitality of *Leardi*. *Hershenow* was a class action seeking statutory damages due to a provision in a standard car rental contract which stated, contrary to Massachusetts law, that any violation of the contract would void the collision damage waiver. Neither named plaintiff had been in a collision which would have arguably triggered collision coverage. The Court applied *Leardi* to reach the conclusion that, standing alone, the unlawful provision did not constitute an "injury" under section 9 because it "did not and could not deter the plaintiffs from asserting any legal rights." *Id.* at 800. The Court contrasted plaintiffs to the tenants in *Leardi,* where the unlawful lease provision "would deter tenants from exercising their legal rights on pain of loss of their tenancy. . . ." *Id.*[10] If it were not already crystal-clear, the Court then left no doubt that *Leardi* remained good law and that it applied to a broad range of deceptive conduct: "[b]y describing the facts at issue in *Leardi* . . . we do not suggest that the holding of that case is limited to landlord-tenant actions." *Id.,* 445 Mass. at 799 n. 19.[11]

---

[10] It also distinguished plaintiffs from the cigarette purchasers in *Aspinall,* who stated a claim for injury within the meaning of section 9 because, as noted, the deceptive advertising to which they were subjected "'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Id.* at 801, quoting *Aspinall,* 442 Mass. at 394.

[11] Significantly, in *Aspinall* the SJC had already signaled that the principle of *Leardi* was far broader than some had argued: "we do not agree . . . with the language of the Appeals Court [in *Lord v. Commercial Union Ins. Co.,* 40 Mass.App.Ct. 309 (2004)] . . . ostensibly limiting the reach of our holding in *Leardi* . . . to landlord-tenant actions." 442 Mass. at 401.

The lesson of these cases for the case at bar is clear. Plaintiff suffered an actionable injury under section 9 because the deceptive message which the November 17, 2003 letter conveyed or tended to convey – i.e., that GOS could lawfully seek a pre-judgment wage attachment against plaintiff – was undoubtedly sufficient to "to have caused a person to act differently from the way he [or she] otherwise would have acted," *Hershenow,* 445 Mass. at 801, quoting *Aspinall,* 442 Mass. at 394, or to "deter [consumers] from exercising their legal rights." *Id.,* 445 Mass. at 800. Indeed, a reasonable person in receipt of such message could very well be induced to pay or try to settle an alleged debt which he might have otherwise contested, to consult with and/or hire an attorney (including, perhaps, bankruptcy counsel) when he would otherwise have tried to resolve the matter on his own, or to consider changing employers in order to evade garnishment. Accordingly, as a matter of law defendant's deceptive conduct caused an injury to plaintiff which is actionable and compensable under G.L. c. 93A, §9.[12]

### IV. PLAINTIFF COMPLIED WITH THE PRE-SUIT DEMAND REQUIREMENT OF G.L. c. 93A, §9.

Section 9 of G.L. c. 93A provides:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.

The service of such a written demand is a jurisdictional prerequisite to filing a consumer claim under the statute. *Spring v. Geriatric Auth.,* 394 Mass. 274, 287 (1985).

---

[12] The "injury" concept of section 9 – i.e., that simply being subjected to deceptive conduct which has the capacity to cause a reasonable person to act differently is actionable – is consistent with the statute's lack of a reliance requirement: "proof of actual reliance by the plaintiff on a representation is not required." *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 703 (1975).

15

The near-identical letters dated July 26, 2005 sent on plaintiff's behalf to GOS and O'Brien (Exs. G and H) undeniably satisfied all requirements of section 9. First, it is self-evident that the letters identify the claimant as Kenneth Kemp. Second, it is equally clear that Mr. Kemp is asserting a claim under G.L. c. 93A, for the statute is referenced in bold capitalized print in the heading of the letter, additional references abound throughout, and the allegedly unlawful conduct is thoroughly and cogently described:

> It is Mr. Kemp's positon that the November 17, 2003 letter (Exhibit B) was unfair and deceptive in violation of G.L. c. 93A, section 2 in the following respects:
>
> (a) A reasonable reading of the letter is that in the event GOS instituted legal proceedings to collect the alleged debt to PCM, it might seek a pre-judgment attachment of Mr. Kemp's wages. However, such a remedy is not available under Massachusetts law. On its face, therefore, this misrepresentation was unfair and deceptive in violation of section 2. Moreover, G.L. c. 93, section 49 provides that the making of a threat "of any action which the creditor in the usual course of business does not in fact take" is deemed to violate section 2. Section 2 was also violated because section 1692e(5) of the FDCPA declares un- lawful "[t]he threat to take any action that cannot legally be taken."

And, third, the chapter 93A claim was filed on August 30, 2005, more than 30 days from defendants' receipt of plaintiff's demand letters.[13] Accordingly, the demands clearly satisfied both the letter and spirit of section 9. In the words of the Appeals Court, each letter "reasonably set forth the acts relied on and was sufficient to give the defendant an opportunity to review the facts and the law to see if the requested relief should be granted and to make a reasonable settlement offer so as to limit damages." *Piccuirro v. Gaitenby,* 20 Mass.App.Ct. 286, 292 (1985).

---

[13] The letters were received by defendants on July 27, 2005, as shown by the return receipts authenticated by Attorney McCaughey at his deposition. Ex. L.

16

That the letters fulfilled the pre-suit demand requirement of section 9 is further shown by the fact that defendants themselves apparently had no difficulty understanding plaintiff's claim. Their response (Ex. I) did not raise any questions about, or request any clarifications of, plaintiff's allegations; nor did it make any specific challenge to the adequacy of the letters as proper demands under section 9. Moreover, the forcefulness and unequivocal nature of defendants' response suggest that the demand letters were, in fact, abundantly clear and substantive.

## Conclusion

Plaintiff Kenneth Kemp has demonstrated that there is no genuine issue of material fact that: (a) defendant's letter of November 17, 2003 was deceptive in violation of G.L. c. 93A, §2; (b) the letter caused a legally compensable injury to plaintiff; and (c) plaintiff's pre-suit demand letters satisfied the requirements of G.L. c. 93A, §9. Accordingly, plaintiff is entitled to a judgment as a matter of law on his individual claim as asserted in count VII of the second amended complaint. The instant motion for partial summary judgment should therefore be granted.

/s/Kenneth D. Quat
Attorney for Plaintiffs
BBO 408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848