UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH KEMP,
On behalf of himself and all others similarly
situated, and
CHRISTINE KEMP,

                            Plaintiffs,

v.

GANICK, O'BRIEN & SARIN, Attorneys at
Law, LAWRENCE E. O'BRIEN, JR., d/b/a
GANICK, O'BRIEN & SARIN, Attorneys at
Law, and DOES 1-5,

                            Defendants.

CIVIL ACTION NO. 05-11516-GAO

## DEFENDANTS GANICK, O'BRIEN & SARIN AND LAWRENCE O'BRIEN'S MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF KENNETH KEMP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND THEIR CROSS MOTION FOR SUMMARY JUDGMENT

In this action, plaintiffs assert claims under the Fair Debt Collection Practices Act ("FDCPA") and Mass. G.L. c. 93A, § 9. Defendants Ganick, O'Brien & Sarin and Lawrence E. O'Brien, Jr., d/b/a Ganick, O'Brien & Sarin (collectively, "GOS") submit this memorandum in support of their opposition to plaintiff Kenneth Kemp's motion for partial summary judgment on liability on Count VIII of plaintiffs' Second Amended Complaint.[1] GOS cross-moves for summary judgment on Count VIII, on the grounds that: (i) the demand letter at issue cannot reasonably be construed as threatening a pre-judgment attachment of the plaintiff's wages and therefore is not unfair or deceptive, and (ii) the claim is barred by the litigation privilege. GOS also moves for summary judgment on plaintiffs' remaining seven claims (Counts I through VII of the Second Amended Complaint), on the following grounds:

(a)     Counts II, VI and VII all assert claims under Mass. G.L. c. 93A that are barred by the litigation privilege;

---

[1] Although Count VIII includes class allegations, no class has yet been certified, and plaintiff Kenneth Kemp's motion for summary judgment is on his individual claim only. Memorandum of Law in Support of Plaintiff Kenneth Kemp's Motion for Partial Summary Judgment, 1-2.

247319_4.DOC

(b)     Counts II and VII also fail because plaintiffs cannot show any harm caused by the alleged unfair and deceptive practices that form the basis for those claims;

(c)     Count I, which asserts a FCDPA claim, is barred by the one-year statute of limitations under the FDCPA; and

(d)     Counts III, IV and V, which all assert FDCPA claims, fail because the bona fide error defense under 15 U.S.C. § 1629k(c) applies.

For the convenience of the Court, a chart listing each of plaintiffs' claims and the grounds on which GOS is moving for summary judgment is attached to this Memorandum as Exhibit A.

## INTRODUCTION

GOS was retained by Performance Capital Management ("PCM"), as assignee in interest for Chase Manhattan Bank, to collect a credit card debt owed by plaintiff Kenneth Kemp (hereinafter "Kemp").  Plaintiffs allege in this suit that in the course of representing PCM, GOS violated the FDCPA and c. 93A in four ways:

(1)     GOS sent a demand letter to Kemp on November 17, 2003 that allegedly included collection costs and attorney's fees in the balance due without indicating that those items were included (Counts I [FDCPA] and VII (c. 93A));

(2)     when GOS filed a collection action in July 2004, it allegedly stated an amount in the demand for relief that included collection costs and attorney's fees without indicating that those items were included (Count II [c. 93A]);

(3)     GOS included in the July 2004 complaint an allegedly "baseless" fraudulent transfer claim against Kemp and his wife (Counts III, IV, V [FDCPA] and VI [c. 93A]); and

(4)     GOS allegedly threatened in the November 17, 2003 demand letter that it would attach Kemp's wages before it obtained a judgment (Count VIII [c. 93A]).

## GOS'S RESPONSE TO PLAINTIFF KENNETH KEMP'S STATEMENT
## OF UNDISPUTED MATERIAL FACTS

GOS does not dispute paragraphs 1 through 8 and 10 through 12 of Kemp's statement of undisputed material facts in support of his motion for partial summary judgment. As to paragraph 9, GOS admits that it revised its standard demand letter in response to the filing of this suit, but denies that the fact is material or admissible. The revision was prompted by the filing of this lawsuit. Deposition of Lawrence E. O'Brien, 10:4 – 10:18 (attached to the Affidavit of Anne Robbins ["Robbins Aff."] at Exhibit E). The revision therefore is a subsequent remedial measure, and evidence regarding it is inadmissible to show "culpable conduct." Fed. R. Evid. 407. Kemp argues only that the letter "will be admissible" to impeach the defendants at trial. Memorandum of Law in Support of Plaintiff Kenneth Kemp's Motion for Partial Summary Judgment ("Pl. Mem."), 8. Although GOS disagrees with this assertion, it is irrelevant. The fact that the revision may become admissible for impeachment if witnesses testify in a particular way at trial does not make the revision admissible for purposes of plaintiff's summary judgment motion, on which the only issue is liability.

## GOS'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      GOS was retained by Performance Capital Management ("PCM"), as assignee in interest for Chase Manhattan Bank ("Chase"), to collect a credit card debt owed by Kemp. Affidavit of Lawrence E. O'Brien ("O'Brien Aff."), ¶ 3.

2.      At the time GOS was retained, GOS received documents from PCM indicating that Kemp owed $9,726.44, plus interest from May 15, 2000 at the rate of twenty-four percent (24%). The interest totaled $8,755.39, and the total due was $18,481.83. O'Brien Aff., ¶ 5.

3.      On behalf of PCM, GOS sent a demand letter to Kemp on November 17, 2003. Deposition of David Book ("Book Dep.") (Robbins Aff., Ex. D), 21:8 – 21:21.

4.      A true and accurate copy of the form of demand letter that was sent to Kemp is attached as Exhibit A to the Affidavit of Anne Robbins. Book Dep. (Robbins Aff., Ex. D), 20:14 – 21:7; 22:13 – 22:21.

5.      The November 17, 2003 letter stated that Kemp owed $18,481.83.  Book Dep. (Robbins Aff., Ex. D), 21:8 – 21:21.

6.      The amount owed by Kemp was reduced to $17,236.32 on or about December 29, 2003, after PCM discovered that the incorrect interest rate had been used.  The correct interest rate was nineteen point eight percent (19.8%).  O'Brien Aff., ¶ 7.

7.      GOS's customary and usual practice was to file suit if it sent out a demand letter and the recipient did not contact GOS within thirty days or make satisfactory arrangements to pay the debt.  O'Brien Aff., ¶ 9.

8.      In September or October of 2003, Kemp conveyed his interest in real property located at 9 Elizabeth Road in Billerica to his wife, Christine Kemp, for one dollar.  Deposition of Kenneth Kemp ("Kemp Dep.") (Robbins Aff., Ex. F), 16:24 – 18:13; 40:21 – 41:14; 139:2 – 139:5.

9.      In July 2004, Christine Kemp sold the property located at 9 Elizabeth Road in Billerica for $323,500.  Kemp Dep. 119:2 – 120:5 and Ex. 1 (Robbins Aff., Exs. F, G).

10.     On July 23, 2004, GOS, on behalf of PCM, filed suit against Kemp and his wife, Christine M. Kemp, in Middlesex Superior Court.  Book Dep. (Robbins Aff., Ex. D), 29:4 – 29:15.  Robbins Aff., Ex. B.

11.     A true and accurate copy of the complaint filed by GOS is attached as Exhibit B to the Affidavit of Anne Robbins.  Book Dep. 29:4 – 29:15.

12.     All complaints filed by GOS are generally reviewed by Lawrence E. O'Brien, the managing partner, before they are filed, even if they are signed by another attorney.  Mr. O'Brien, who has been licensed as an attorney in Massachusetts since 1975, makes the final determination of whether or not to file suit.  Book Dep. (Robbins Aff., Ex. D), 11:17 – 12:15; 30:7 – 30:21.  Deposition of Lawrence E. O'Brien ("O'Brien Dep.") (Robbins Aff., Ex. E), 4:8 – 4:12.

13.     As of July 23, 2004, the amount owed by Kemp was $18,360.96.  O'Brien Aff., ¶ 8.

14.    In preparing the complaint, GOS relied on a credit report, dated August 14, 2003, on Kemp.  Book Dep. (Robbins Aff., Ex. D), 39:13 – 40:11.

15.    A true and accurate copy of the credit report that GOS relied on is attached to the Affidavit of Anne Robbins as Exhibit C.  Book Dep. (Robbins Aff., Ex. D), 40:2 – 40:11.

16.    The credit report stated that Kemp was in default on three credit card accounts.  Robbins Aff., Ex C.  Book Dep. (Robbins Aff., Ex. D), 43:1 – 44:11.

17.    In preparing the Superior Court complaint, GOS also relied on the fact that Kemp's name was on two mortgages on the 9 Elizabeth Road property, one dated September 25, 2003 and one dated October 6, 2003, totaling $255,000.  Book Dep. (Robbins Aff., Ex. D), 33:12 – 34:19, 36:23 – 37:4, 45:20 – 46:11.  *See also* Kemp Dep., Exs. 5, 6 (Robbins Aff., Ex. G).

18.    PCM settled its suit against plaintiffs for $2,000.  O'Brien Aff., ¶ 11.

19.    Plaintiffs did not suffer any loss of money or property as a result of GOS's actions.  Kenneth Kemp's Answers to First Set of Interrogatories, Answer no. 23 (Robbins Aff., Ex I); Christine Kemp's Answers to First Set of Interrogatories, Answer no. 23 (Robbins Aff., Ex J).

**ARGUMENT**

**I.    THE NOVEMBER 17, 2003 DEMAND LETTER CANNOT REASONABLY BE UNDERSTOOD TO THREATEN A PRE-JUDGMENT ATTACHMENT OF WAGES.**

The fourth paragraph of the November 17, 2003 demand letter (Robbins Aff., Ex. A) states as follows:

> Therefore, unless we hear from you within 30 days of the date of this letter, or you make satisfactory arrangements to pay this claim, we shall institute legal proceedings and, pending court approval, may make such attachment of your property, bank account or wages, as shall be necessary to satisfy the judgment and execution which our client expects to obtain against you.

Plaintiff Kenneth Kemp alleges, in Count VIII of plaintiffs' Second Amended Complaint, that the above paragraph is unfair and deceptive in violation of c. 93A.  In his motion for partial summary judgment, Kemp argues that the paragraph is deceptive as a matter of law because it

"conveys the distinct message that GOS could seek a pre-judgment wage attachment against plaintiff, and that such an attachment could be obtained (with court approval)." Pl. Mem. 7.

A practice is deceptive under c. 93A only if it "could *reasonably* be found to have caused a person to act differently from the way he [or she] otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394, 813 N.E.2d 476, 486 (2004) (emphasis added). Plaintiff's interpretation of the above paragraph is not reasonable. Plaintiff ignores the entire end of the paragraph, which carefully states that GOS would seek an attachment of the recipient's wages "as shall be necessary" "to satisfy the judgment and execution which our client expects to obtain against you." When the whole paragraph is considered, the only reasonable reading of the letter is that: (1) GOS would institute legal proceedings unless the recipient took one of the steps indicated; (2) GOS expected that it would obtain a judgment and execution in any such action; and (3) if GOS obtained a judgment and execution, it would seek to satisfy the judgment by attaching the recipient's property, bank account and wages, as necessary. The phrase "as shall be necessary" is key. It plainly indicates that GOS would attach the recipient's property, bank account and wages only in order to satisfy the judgment. Plaintiff Kenneth Kemp's motion for partial summary judgment therefore is without merit, and GOS is entitled to summary judgment on Count VIII.

Kemp alternatively argues that even if the challenged language does not convey the "distinct" message that GOS could seek a prejudgment attachment of wages, it still is unfair and deceptive because it might be read that way. Pl. Mem., at 10. The standard, of course, is not how the letter conceivably could be read, but how it reasonably would be read. *Aspinall*, 442 Mass. at 394, 813 N.E.2d at 486. Here, there is only one reasonable interpretation -- that GOS would seek an attachment as necessary to satisfy the judgment it expected to obtain. Further, the three cases cited by plaintiff as support for this argument are inapposite. *Insituform Technologies, Inc. v. American Home Assurance Co.*, 364 F. Supp. 2d 3 (D. Mass. 2005) is not a c. 93A case. It concerns the interpretation of an insurance policy, and holds that because it is unclear whether a sentence modifies one or two provisions, the policy is ambiguous. *Id.* at 4-5.

Although the other two cases concern demand letters sent in debt collection cases, in both cases the letter was inconsistent on its face. *See Russell v. Equifax, A.R.S.*, 74 F.3d 30 (2d Cir. 1996) (letter stated both that account had been placed for immediate collection and that debtor had thirty days to dispute debt or to request verification); *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 2d 293 (E.D.N.Y. 2005) (letter stated both that office would review account if recipient did not pay or make arrangements to pay the debt and that an attorney reviewed the letter and the appropriateness of sending it).

## II.     ALL OF PLAINTIFFS' C. 93A CLAIMS ARE BARRED BY THE LITIGATION PRIVILEGE.

Under Massachusetts law, an "absolute privilege" attaches to statements made by an attorney "where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sriberg v. Raymond*, 370 Mass. 105, 109, 345 N.E.2d 882, 884 (1976). The privilege rests on "the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Id.* The particular theory of liability asserted against the defendant attorney is irrelevant. The privilege is "a general bar to civil liability based on the attorney's statements." *Blanchette v. Cataldo*, 734 F.2d 869, 876 (1st Cir. 1984) (citing *Sullivan v. Birmingham*, 11 Mass. App. 359, 368, 416 N.E.2d 528, 533 (1981)). "To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory." *Doe v. Nutter, McClennan & Fish*, 41 Mass. App. 137, 141, 668 N.E.2d 1329, 1333 (1996). In *Frazier v. Bailey*, 957 F.2d 920, 932 (1st Cir. 1992), for example, the Court held that the privilege barred claims for negligence, defamation, intentional infliction of emotional distress and violations of the Massachusetts Civil Rights Act. Here, the litigation privilege bars all of plaintiff's c. 93A claims (Counts II, VI, VII and VIII).

The c. 93A claims asserted in Counts II and VI arise out of allegations contained in the Superior Court complaint filed by GOS in July 2004. Plaintiffs allege (incorrectly) in Count II of

this action that GOS violated c. 93A by including collection costs and attorney's fees in the amount stated in the demand for relief without indicating that those items were included. Second Amended Complaint, ¶¶ 14-17. Count VI alleges that GOS violated c. 93A by asserting an allegedly "baseless" fraudulent transfer claim in the complaint. *Id.*, ¶ 26. Counts II and VI therefore arise out of statements made in the institution or conduct of litigation. For such statements, all that is required for the privilege to attach is that the statements pertain to the litigation proceedings (in contrast to, for example, business matters). *Meltzer v. Grant*, 193 F. Supp. 2d 373, 378 (D. Mass. 2002). As long as the statements pertain to the litigation, the attorney's motive is irrelevant. *Blanchette*, 734 F.2d at 876. *See also Doe*, 41 Mass. App. Ct. at 140, 668 N.E.2d at 1332-33 (privilege provides a complete defense even if statements at issue were uttered maliciously or in bad faith). The allegations made in the July 2004 complaint were pertinent to litigation; indeed, they were part of it. The litigation privilege thus bars Counts II and VI of plaintiffs' Second Amended Complaint.

Counts VII and VIII of plaintiffs' Second Amended Complaint arise from statements made in the November 17, 2003 demand letter. Plaintiffs allege (again, incorrectly) in Count VII that GOS violated c. 93A by stating a balance due that included collection costs and attorney's fees without indicating that those items were included. Second Amended Complaint, ¶ 41. Count VIII alleges that GOS violated c. 93A by threatening to seek a prejudgment attachment of plaintiff's wages. *Id.*, ¶¶ 54-55. Although statements in the demand letter were not made within the confines of pending litigation, the litigation privilege extends to communications made "preliminary to litigation," as long as the communications related to a legal proceeding "which was contemplated in good faith and which was under serious consideration." *Sriberg*, 370 Mass. at 109, 345 N.E.2d at 884.

The November 17, 2003 demand letter was preliminary to litigation. The letter states, "Unless we hear from you within 30 days of the date of this letter, or you make satisfactory arrangements to pay this claim, we shall institute legal proceedings . . .". Robbins Aff., Ex. A. GOS's usual practice was to file suit unless it received information that the money was not owed

or the plaintiff made arrangements to pay the debt. O'Brien Aff., ¶ 9. Indeed, GOS did proceed to file suit in this case. Further, the litigation contemplated in November 2003 was contemplated in good faith, as plaintiff owed GOS's client over $9,000, plus interest. *Id.*, ¶ 5. Statements made in the demand letter thus related to a legal proceeding which was contemplated in good faith and which was under serious consideration. *See Sriberg v. Raymond*, 414 F. Supp. 396, 398 (1976) (holding that statements made in letter stating that attorney would commence suit if demands made in letter were not met were privileged), aff'd, 544 F.2d 15 (1st Cir. 1976).

**III.    PLAINTIFFS CANNOT SHOW ANY HARM RESULTING FROM THE ALLEGED C. 93A VIOLATIONS THAT FORM THE BASIS FOR COUNTS II AND VII.**

Counts II and VII of plaintiffs' Second Amended Complaint assert claims under c. 93A for GOS's alleged misrepresentation of "the character, extent or amount of the debt" in, respectively, the Superior Court complaint and the November 17, 2003 demand letter. Both of these claims arise from GOS's alleged inclusion of collection costs and attorney's fees in the amount stated as due without indicating that those items were included. Second Amended Complaint, ¶¶ 14-17, 41. Although GOS adamantly denies that the statements of the amount due included collection costs and attorney's fees, the Court need not resolve that dispute, because plaintiffs cannot show any harm resulting from the alleged violations, as Massachusetts law requires.

The Massachusetts Supreme Judicial Court recently reaffirmed that a "causal connection" between the alleged c. 93A violation and a loss to the plaintiff is "an essential predicate to recovery" under § 9. *Hershenow v. Enterprise Rent-a-Car Co.*, 445 Mass. 790, 791 (2006). The plaintiffs in *Hershenow* alleged that the defendant rental car company had violated c. 93A by selling a collision damage waiver that was unfair and deceptive and that failed to comply with the statute regulating collision damage waivers, G.L. c. 90, § 32E ½. Plaintiffs, however, returned their car without any damage and thus did not invoke the collision damage waiver. *Id.* at 791-92.

The Court acknowledged that § 9 was amended in 1979 to permit recovery when an unfair or deceptive act causes personal injury such as emotional distress, even if plaintiff did not lose any money or property. *Id.* at 798. The Court then stated, however:

> Nothing in the statutory language or legislative history suggests that the 1979 amendments eliminated or altered the requirement of a causal connection to a loss. *See Kohl v. Silver Lake Motors, Ins.*, supra; *Slaney v. Westwood Auto, Inc.*, supra at 698, 322 N.E.2d 768. See also Greaney, Consumer Protection Law, 65 Mass. L. Rev. 88, 89 (1980) ("Despite the breadth of the [1979] amendment, some limitation will occur by the requirement that the plaintiff still establish causation"). We have recently reaffirmed that, in enacting and then amending G.L. c. 93A, § 9, the Legislature intended that "causation is a required element of a successful G.L. c. 93A claim." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 401, 813 N.E.2d 476 (2004).

*Hershenow*, 445 Mass. at 798. Because the plaintiffs returned their rental cars undamaged, the Court held that they could not demonstrate that the allegedly deceptive collision damage waiver made them "worse off during the rental period than [they] would have been had the [waiver] complied in full with the requirements of G.L. c. 90, § 32E ½." *Id.* at 800-01. The Court thus held that they could not recover under c. 93A. *Id.* at 801.

Plaintiffs have conceded that they cannot show any loss of money or property as a result of GOS's actions. Kenneth Kemp's Answers to First Set of Interrogatories, Answer no. 23 (Robbins Aff., Ex. I); Christine Kemp's Answers to First Set of Interrogatories, Answer no. 23 (Robbins Aff., Ex. J). Kemp did not pay the amount demanded in the November 17, 2003 demand letter or the Superior Court complaint. Indeed, although the principal on the debt owed by plaintiff was over $9,000, PCM settled its suit against Kemp for just $2,000. O'Brien Aff., ¶ 11.

Further, while Kemp contends that he suffered emotional distress as a result of GOS's actions, he cannot show that he suffered emotional distress as a result of GOS's alleged inclusion of collection costs and attorney's fees in the amounts stated as due. The closest Kemp came on this point was his deposition testimony that he suffered emotional distress because the amount he was told that he was owed (approximately $18,000) was a "high number." Kemp Dep. (Robbins Aff., Ex. F) 106:2 – 106:10. It is undisputed, however, that the

balance due on the debt, plus interest (even if calculated at 19.8%), was over $16,000 by November 2003. O'Brien Aff., ¶¶ 5, 7. Plaintiff has not contended, nor can he plausibly contend, that he would not have been distressed if he had been told that he owed $16,000, rather than $18,000. Therefore, even if plaintiffs could show (which they cannot) that GOS had included collection costs and attorney's fees in the amounts stated as due, plaintiffs could not demonstrate that they are "worse off" than they would have been if the alleged conduct had not occurred. *Hershenow*, 445 Mass. at 800-01.

## IV.    COUNT I IS BARRED BY THE STATUTE OF LIMITATIONS.

Count I of plaintiffs' Second Amended Complaint asserts that GOS misrepresented "the character, amount, or legal status" of Kemp's debt in the Superior Court complaint, in violation of § 1692e of the FDCPA. Count I arises from GOS's alleged inclusion of collection costs and attorney's fees in the amount stated as due in the Superior Court complaint without indicating that those items were included. Second Amended Complaint, ¶¶ 14-15. As noted above, GOS adamantly denies that it included collection costs or attorney's fees in the amount stated as due. At least as to Count I, however, the Court need not resolve this dispute, because Count I is barred by the one year statute of limitations under the FDCPA. 15 U.S.C. § 1692k(d).

Plaintiffs filed this action on July 19, 2005. Therefore, they cannot recover under the FDCPA for any claim that accrued before July 19, 2004. While the Superior Court action was not filed until July 23, 2004, Count I did not accrue when GOS filed the Superior Court complaint. It accrued in November 2003, when GOS sent Kemp a demand letter that, exactly like the subsequent Superior Court complaint, allegedly included collection costs and/or attorney's fees in the amount stated as owed by Kemp. *Compare* Second Amended Complaint, ¶ 41 *with* Second Amended Complaint, ¶ 14.

In *Fraenkel v. Messerli & Kramer, P.A.*, No. Civ. 04-1072JRTFLN (D. Minn. July 29, 2004), the Court held, on similar facts, that plaintiff's claim was time-barred. In *Fraenkel*, the defendant law firm was retained to collect a credit card debt. It sent plaintiff a demand letter in December 2002 that allegedly violated § 1692e by demanding attorney's fees that were not

authorized under the plaintiff's card member agreement. *Id.* at *3. Plaintiff did not file suit until February 2004, and the defendant law firm argued that the claim was time-barred. *Id.* at *1.

Plaintiff argued that his § 1692e claim was timely because the defendant law firm had filed a collection action in March 2003. *Id.* at *3. The language in the complaint, however, differed only slightly from that in the demand letter. *Id.* at *3 ("The service of the complaint repeated the same information alleged on December 3 and 13, 2002."). The Court concluded that the service of the complaint was a "new communication" regarding an "old claim" and did not start a new period of limitations. *Id.* *See also Deaville v. Capital One Bank*, 425 F. Supp. 2d 744, 752 (W.D. La. 2006) (claim barred where plaintiff aware of allegedly inaccurate billing statement in June 2002, but did not file suit until July 2003).

In this case, it is undisputed that Kemp received the demand letter in or about November 2003. Kemp alleges, albeit incorrectly, that the demand letter stated an amount due that included collection costs and attorney's fees. Any claims based on GOS's alleged inclusion of collection costs and attorney's fees in the amounts stated as owed by Kemp thus accrued in November 2003. *Kirscher v. Messerli & Kramer, P.A.*, No. Civ. 05-1901PAMRLE, 2006 WL 145162, *3 (D. Minn. Jan. 18, 2006) ("A debt collector violates § 1692e when it misrepresents the legal status of a debt. The violation accrues when the debtor receives notice of the misrepresentation.") *See also Calka v. Kucker, Kraus & Bruh, LLP*, No. 98 Civ. 0990 (RWS), 1008 WL 437151 (S.D.N.Y. Aug. 3, 1998) (statute of limitations for alleged violation of § 1692e accrued when the defendants filed a complaint in which they allegedly overstated the amount due and the purported legal fees, not when defendants filed amended complaint, because plaintiff was on notice of the alleged FDCPA violation once suit was filed).

Further, Kemp knew or should have known what he owed. Like all credit card holders, Kemp received monthly statements that stated the amount due and the interest rate under his credit card agreement. Indeed, Kemp testified during his deposition that he believed he owed about $9,000 on the Chase account, without interest, *see* Kemp Dep. (Robbins Aff., Ex. F), 96:3 – 99:3, which is in fact about what he owed when PCM placed the account for collection.

O'Brien Aff., ¶ 5. Kemp also was able to check his credit report, which stated the amount due. *See* Robbins Aff., Ex. C. Kemp works in the real estate industry and has a broker's license. Kemp Dep. (Robbins Aff., Ex. D), 5:15 – 6:24, 8:24 – 9:6, 10:20 – 11:1. He was fully able to calculate the amount owed as of November 17, 2003 and compare it to the amount stated as due in the demand letter.

## V.   COUNTS III, IV AND IV ARE BARRED BY THE "BONA FIDE ERROR" DEFENSE UNDER THE FDCPA.

Counts III, IV and V assert claims against GOS under §§ 1692d, e and f of the FDCPA. All of these claims arise from GOS's filing of an allegedly "baseless" fraudulent transfer claim. Second Amended Complaint, ¶¶ 23, 26, 29. The transfer at issue was Kemp's fall 2003 conveyance of his interest in real estate located at 9 Elizabeth Road, Billerica, to his wife in exchange for one dollar. Robbins Aff., Ex. B; Kemp Dep. (Robbins Aff., Ex. F), 16:24 – 18:13; 40:21 – 41:14; 139:2 – 139:5. Less than a year later, Christine Kemp sold the property for $324,900. Kemp Dep. 119:2 – 120:5 and Ex. 1 (Robbins Aff., Exs. F, G).

Plaintiffs contend, in part, that the transfer was not fraudulent because Kemp was not insolvent at the time of the transfer. Under Mass. G.L. c. 109A, § 3, a debtor "who is generally not paying his debts as they become due is presumed to be insolvent." Even assuming, as plaintiffs allege, that Kemp in fact was not insolvent at the time of the transfer, GOS asserted the fraudulent transfer claim only after it reviewed an August 14, 2003 credit report for Kemp. Book Dep. (Robbins Aff., Ex. D), 39:19 – 39:21. That report indicated that plaintiff had three credit card accounts, totaling over $28,000, which were in default. Book Dep. (Robbins Aff, Ex. D), 43:1 – 44:11; Robbins Aff., Ex. C. GOS also was aware that Kemp was named on two mortgages on the Elizabeth Road property (one dated September 25, 2003 and the other October 6, 2003) totaling $255,000. Book Dep. (Robbins Aff., Ex. D), 33:12 – 34:19, 36:23 – 37:4, 44:20 – 46:11 and Kemp Dep., Exs. 5, 6 (Robbins Aff., Ex. F). In addition, GOS's procedure was that the managing partner, Lawrence E. O'Brien, who has been licensed as an attorney in Massachusetts for thirty years, reviewed all complaints before they were filed. Book

Dep. (Robbins Aff., Ex. D), 11:17 – 12:15, 30:7 – 30:21; O'Brien Dep. (Robbins Aff., Ex. E), 4:8 – 4:12.

Section 1629k(c) of the FDCPA provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

Numerous cases have held that a debt collector who relies on information provided by a third party is entitled to the bona fide error defense carved out by § 1629k(c). In *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004), for example, the Seventh Circuit affirmed the trial court's holding that the defendant collection agency was not required to independently confirm that the debtor had not filed for bankruptcy. The Seventh Circuit held that the collection agency reasonably could rely on its understanding with the creditor that the creditor would not forward accounts for collection if the account had been placed in bankruptcy. *Id.* at 968. *See also Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996) (holding that debt collector could rely on client's interpretation of lease).

Here, there is not even the allegation that the information relied on was erroneous. Based on the credit report, the $255,000 in mortgage debt taken on by Kemp in the fall of 2003 and the statutory presumption created by G.L. c. 109A, § 3, GOS reasonably alleged that Kemp was insolvent and that his transfer of the Elizabeth Road property to his wife for one dollar was fraudulent. In addition, the complaint was reviewed by GOS's managing partner, who has been licensed in Massachusetts since 1975, before it was filed. Even if, therefore, GOS's assertion of the fraudulent transfer claim was erroneous, it was a bona fide error that occurred despite the maintenance of procedures reasonably designed to avoid such an error.

## Conclusion

For the reasons set forth above, GOS respectfully requests that the Court: (i) deny plaintiff Kenneth Kemp's motion for partial summary judgment on liability on Count VIII of plaintiffs' Second Amended Complaint, and (ii) grant GOS's motion for summary judgment on all eight counts of plaintiffs' Second Amended Complaint.

GANICK, O'BRIEN & SARIN and
LAWRENCE E. O'BRIEN, d/b/a
GANICK, O'BRIEN & SARIN

By its attorneys,


/s/ Anne Robbins
J. Allen Holland (BBO #546892)
Anne Robbins (BBO #561968)
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02199-7613
(617) 951-0800


**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was
served upon the attorney of record for each other party by
electronic means on October 23, 2006.

/s/ Anne Robbins

**EXHIBIT A**

**KEMP v. GANICK, O'BRIEN & SARIN**

**CHART OF CLAIMS AND SUMMARY JUDGMENT ARGUMENTS**

| Count | FDCPA or 93A? | 11/17/03 Demand Letter or Superior Court Complaint? | Allegedly Improper Conduct | Summary Judgment Grounds |
|---|---|---|---|---|
| I | FCDPA | Complaint | Alleged inclusion of collection costs and attorneys' fees in amount stated as due | Statute of limitations |
| II | 93A | Complaint | Same as above | Litigation privilege; Lack of causation |
| III | FDCPA | Complaint | Assertion of allegedly baseless fraudulent conveyance claim | Bona fide error |
| IV | FDCPA | Complaint | Same as above | Bona fide error |
| V | FDCPA | Complaint | Same as above | Bona fide error |
| VI | 93A | Complaint | Same as above | Litigation privilege |
| VII | 93A | Demand Letter | Alleged inclusion of collection costs and attorney's fees in amount stated as due | Litigation privilege; Lack of causation |
| VIII | 93A | Demand Letter | Alleged threat to attach wages pre-judgment | Language cannot reasonably be construed as threatening pre-judgment attachment; Litigation privilege |