# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>KENNETH KEMP, )<br>On behalf of himself and all others )<br>similarly situated,  and )<br>CHRISTINE KEMP, )<br>　　　　　　　　Plaintiffs )<br> )<br>v. )<br> )<br>GANICK, O'BRIEN & SARIN, Attorneys at Law, )<br>LAWRENCE E. O'BRIEN, JR., d/b/a )<br>GANICK, O'BRIEN & SARIN, Attorneys at Law, )<br>And DOES 1-5, )<br>　　　　　　　　Defendants_____ ) | Civil No. 05-11516-GAO |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs Kenneth and Christine Kemp submit this memorandum of law in opposition to defendants' motion for summary judgment on Counts I –VII of the Second Amended Complaint ("SAC") and cross-motion for summary judgment on Count VIII of the SAC.

### Plaintiffs' Statement of Disputed and Undisputed Material Facts

**A. Response to Defendants' Statement of Undisputed Material Facts**

Plaintiffs respond to defendants' statement of undisputed material facts as follows:

1. Not disputed.

2. Plaintiffs do not dispute that GOS received documents from PCM.  The averments of Lawrence E. O'Brien as to the contents of said documents constitute

inadmissible hearsay which may not be considered on summary judgment.
*Fed.R.Civ.P. 56(e)*.

3.  Not disputed.

4.  Not disputed.

5.  Not disputed.

6.  Plaintiffs do not dispute that the referenced amount was reduced, but dispute any averment or allegation as to what "PCM discovered," as no such language appears in the O'Brien affidavit and it would in any event constitute inadmissible hearsay which may not be considered on summary judgment. *Fed.R.Civ.P. 56(e)*.

7.  Not disputed.

8.  Plaintiffs do not dispute that one dollar was part of the consideration for the transfer.  Additional consideration was that Kenneth Kemp, along with Christine Kemp, would benefit from receiving a lower mortgage rate.  Kemp Depo, pp. 30-31 (Quat Aff., Ex. A).

9.  Not disputed.

10. Not disputed.

11. Not disputed.

12. Not disputed.

13. Disputed.  Plaintiff Kenneth Kemp denies that he owed the alleged debt in the amount claimed and that PCM was the owner of the debt.  Kemp Depo., pp. 75-76; 81-84; 98. (Quat Aff., Ex. B).

14. Not disputed.

15. Not disputed.

16. Plaintiffs do not dispute this statement of fact, but deny it is relevant to the motions before the Court.

17. Not disputed.

**B. Plaintiffs' Statement of Additional Material Facts**

In addition to the disputed facts set forth above, plaintiffs submit that the following material facts establish that Kenneth Kemp is entitled to partial summary judgment on Count VIII of the SAC and that genuine issues remain for trial on the remaining counts:

1. In the course of his 10 years of practicing law in Massachusetts Attorney David Book had never moved for a pre-judgment wage attachment, and he agrees with plaintiffs that doing so would have been unlawful. Book Depo, p. 15 (Quat Aff., Ex. C).

2. The November, 2003 demand letter was directed to Kenneth Kemp only, and there is no allegation or indication that defendants communicated in any fashion with Christine Kemp prior to the filing of the Superior Court complaint or made any monetary demand on her. Robbins Aff., Ex. A.

3. The amount claimed in the demand letter to Mr. Kemp ($18,481.83) was not the same as that sought against him in the complaint ($18,360.96). Robbins Aff., Exs. A and B.

4. The three purported delinquencies reflected on Mr. Kemp's credit report had occurred years prior to the alleged fraudulent transfer of the property known as 9 Elizabeth Road, Billerica. Robbins Aff., Ex. C.

5. Mr. Kemp's credit report relied on by defendants in asserting the fraudulent transfer claim reflected 9 accounts which were either current or paid in full. Robbins Aff., Ex. C; Book Depo, pp 40-49 (Quat Aff., Ex. D).[1]

6. With respect to their assertion of the fraudulent transfer claim, defendants had no knowledge as to whether Mr. Kemp had been behind in any of his utility payments or any other debts not reflected on the credit report. Book Depo, pp. 44, 47 (Quat Aff., Ex. D).

7. Defendants did not compare Mr. Kemp's assets and debts prior to asserting the fraudulent transfer claim against him. Book Depo., pp. 34-37 (Quat Aff., Ex. E).

### Argument

Summary judgment is only warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. A genuine issue of material fact exists "where the resolution of a disputed fact holds the potential to change the outcome of the case." *Hunter ex rel. Hunter v. Barnstable School Committee,* ___ F.Supp.2d ___, 2006 WL 2949110 *3 (D.Mass. Oct 17, 2006)(citations omitted). In ruling on a summary judgment motion, the Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*

---

[1] These current or paid-up debts were those to American Honda; Citi Financial, First Nationalwide, Americredit; Fleet; J.C.Penny; National Tire; Dovenmuhl Mortgage; and U.S. Trust. Robbins Aff., Ex. C; Book Depo, pp. 40 -49 (Quat Aff., Ex D).

I. **THE NOVEMBER 17, 2003 DEMAND LETTER WAS DECEPTIVE AS A MATTER OF LAW; AT A MINIMUM, A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER IT VIOLATED G.L. c. 93A.**

Defendants contend they are entitled to summary judgment on Count VIII of the SAC because the November 17, 2003 demand letter was not unlawfully deceptive as to whether it stated or implied that GOS could seek a pre-judgment attachment of Mr. Kemp's wages. Not only is this position at odds with basic principles of construction and relevant case law, but – as Kenneth Kemp demonstrated in his motion for partial summary judgment – just the opposite is true.[2]

Conduct is deceptive under chapter 93A if it has "a tendency to deceive." *Leardi v. Brown*, 394 Mass. 151, 156 (1985)(citation omitted). Otherwise stated, the statute is violated by a misrepresentation which "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 396 (2004). Thus, the question of whether an act or practice is deceptive within the meaning of c. 93A is "to be answered on an objective basis." *Id.*, at 394 (citing *Lowell Gas Co. v. Attorney Gen.*, 377 Mass. 37, 51 (1979) and *Commonwealth v. AmCan Enters., Inc.*, 47 Mass. App. Ct. 330, 335 (1999)). As the Court emphasized in *Aspinall*: "[i]n determining whether an act or practice is deceptive, regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which [the act or practice] might reasonably be expected to have upon the general public." *Id.* (citations and internal

---

[2] It must be noted at the outset that defendants do not dispute that: (a) the alleged debt in question was incurred primarily for personal, family, or household purposes, thus bringing it within the scope of G.L. c. 93A, §2; (b) Massachusetts law does not permit the pre-judgment attachment of wages; (c) if the November 17, 2003 letter was deceptive, it caused an "injury" within the scope of G.L. c. 93A, §9, and (d) Kenneth Kemp's pre-suit demand for relief complied with the requirements of G.L. c. 93A, § 9. *See* Affidavit of Kenneth Kemp in Support of Motion for Partial Summary Judgment and Defendant's Opposition to Kenneth Kemp's Motion for Partial Summary Judgment.

quotation marks omitted).  Thus, deception can occur, and G.L. c. 93A, §2 can be

violated, even if the challenged statement is not totally false:  "[it] may consist of a half

truth, or may even be true as a literal matter, but still create an over-all misleading

impression through failure to disclose material information."  *Id*. at 395 (citations

omitted).

Despite the broad reach of chapter 93A, the Massachusetts legislature has made

the protection of consumers from deceptive debt collection practices a particular priority,

as shown by the enactment of G.L. c. 93, §49, which reads: "No one who is a creditor or

an attorney for a creditor . . . shall collect or attempt to collect such [consumer] debt in an

unfair, deceptive or unreasonable manner."  The statute further provides that "[f]ailure to

comply with the provisions of this section shall constitute an unfair or deceptive act or

practice under the provisions of chapter ninety-three A."

While deceptiveness is often an issue of fact, by no means is this always the case:

> [I]n some cases, whether a representation is deceptive within
> the meaning of c. 93A, §2(a)  may be determined as a matter
> of law.   In such cases . . .  the deceptive meaning can be
> determined "through an examination of the representation,
> including an evaluation of such factors as the entire [document],
> the juxtaposition of various phrases in the document, the nature
> of the claim, and the nature of the transaction."

*Amcan Enters.,* 47 Mass.App.Ct. at 336, quoting *Assoc., Inc.,* 103 F.T.C. 110, 166(1984).

*See,* also, *Leardi* (upholding summary judgment entered on chapter 93A claim); *Aspinall*,

442 Mass. at 402 (plaintiffs' allegations sufficient to establish that product "was

deceptively advertised as a matter of law"); *Anthony's Pier 4 v. HBC Assoc.,* 411 Mass.

451, 474-475 (1991)(conduct "in disregard of known contractual arrangements" violated

chapter 93A as a matter of law); *Guenard v.  Burke,* 387 Mass. 802, 809 (1982)

(attorney's reliance on unenforceable fee agreement constituted chapter 93A violation as a matter of law).

In view of the above principles, it is apparent that the November 17, 2003 letter is unlawfully deceptive. Reduced to its essence, the letter informs Kemp that if GOS files suit it "may make such attachment of . . . your wages as shall be necessary to satisfy the judgment and execution which our client expects to obtain against you." This conveys the unmistakeable message that GOS might seek a pre-judgment wage attachment against plaintiff, and that such an attachment could be obtained (with court approval). Not only does the "attachment" language follow immediately upon the phrase "we shall institute legal proceedings," but, moreover, the remedy is described as one available for the purpose of satisfying a judgment which GOS's client "expects" to recover, i.e., in the future. In addition, the reference to wages is included in the same word grouping as references to property and bank accounts - "*your property, bank account or wages;*" however, unlike wages, property and bank accounts *are* subject to attachment prior to judgment. *See Mass. R. Civ. P. 4.1*; *Mass. R. Civ. P. 4.2.* Clearly, therefore, the letter is designed to "unlawfully scare" a reasonable consumer into believing that his or her wages could be garnished upon the filing of a collection suit. *Gionis v. Javitch, Block & Rathbone,* 405 F.Supp.2d 856, 868 (S.D.Ohio 2005). However, even assuming *arguendo* that the challenged language only has the "tendency" to convey this message or "permit[s] more than one rational interpretation," *Insituform Technologies, Inc. v. American Home Assurance Co.,* 364 F.Supp.2d 3, 5 (D.Mass. 2005), both *Leardi* and *Aspinall* instruct that it is still unlawfully deceptive in violation of G.L. c. 93A, §2.

The letter is also unlawfully deceptive in violation of G.L. c. 93A because it violates G.L. c. 93, §49, which deems it a deceptive act for a creditor's attorney to threaten "any action which the creditor in the usual course of business does not in fact take." Attorney David Book, who was the attorney of record in the collection suit filed against plaintiff, acknowledged that in the course of his 10 years of practicing law in Massachusetts he had never moved for a pre-judgment wage attachment, and that doing so would have been unlawful. Book Depo, p. 15 (Quat Aff., Ex. C).

Defendant's letter also violates G.L. c. 93A because it violates the FDCPA. A regulation promulgated by the Massachusetts Attorney General pursuant to G.L. c. 93A, §2(c) provides that a violation of the Federal Consumer Credit Protection Act – of which the FDCPA is a part - constitutes a *per se* violation of G.L. c. 93A, §2. 940 CMR 3.16.[3] This regulation "has the force of law." *Brennan v. Carvel Corp.,* 929 F.2d 801, 812 (1st Cir. 1991), *quoting Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 775 (1980). *See Martin v. Sands,* 62 F.Supp.2d 196, 201 (D. Mass. 1999)(holding G.L. c. 93A, §2 is violated by proof of FDCPA violation).

As this Court has noted, "[t]he FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose." *Pettway v. Harmon Law Offices,* 2005 WL 2365331 *3 (D. Mass., Sept. 27, 2005). In addition, the standard used in determining whether an FDCPA violation has occurred is that of "the least

---

[3] The regulation reads in pertinent part:

> Without limiting the scope of any other rule, regulation or
> Statute, an act or practice is a violation of M.G.L. c. 93A, §2 if:
>                    .    .    .    .
> (4) It violates the Federal Trade Commission Act, the Federal
> Consumer Credit Protection Act or other Federal consumer protection
> statutes within the purview of M.G.L. c. 93A, §2.

sophisticated consumer." *Id., quoting Martin v. Sands,* 62 F.Supp.2d 196, 199 (D. Mass.

1999). This is a less rigorous test "than simply examining whether particular language

would deceive or mislead a reasonable consumer," such as that employed under G.L. c.

93A. *Swanson v. Southern Oregon Credit Service, Inc.,* 869 F.2d 1222, 1227 (9th Cir.

1988). *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1173 (11th Cir. 1985)(FDCPA

protections intended "for the public – that vast multitude which includes the ignorant, the

unthinking, and the credulous"). Thus, communications which on their face are

deceptive to the least sophisticated consumer entitle plaintiff to summary judgment under

the FDCPA. *See,* e.g., *Beattie v. D.M. Collections, Inc.,* 764 F.Supp. 383, 392 (D. Del.

1991).

The FDCPA proscribes the very kind of conduct at issue here:

> 15 U.S.C. §1692e.  False or misleading representations.
>
> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt.  Without limiting the general application of the foregoing,
> the following conduct is a violation of this section:
>
> .    .    .    .    .    .
>
> *(4) The representation or implication that nonpayment of
> any debt will result in the . . . garnishment [or] attachment
> of any property or wages of any person unless such action
> is lawful and the debt collector or creditor intends to take
> such action.*
>
> *(5) The threat to take any action that cannot legally be taken
> or that is not intended to be taken.*

(emphases added). Since the pre-judgment wage attachment of wages in Massachusetts

is not "lawful" and is a remedy "that cannot legally be taken," defendant's letter violated

sub-sections (4) and (5) of section 1692e as a matter of law. Sub-section (5) was also

violated because – as explained above - it is undisputed that defendants never intended to

try to attach plaintiff's wages pre-judgment, which by Attorney Book's own admission

would have been unlawful and which he has never attempted.  *See Martin,* 62 F.Supp.2d

at 201(section 1692e violated as a matter of law by a "literally false statement").

     Although plaintiffs believe the letter states unequivocally that Mr. Kemp's wages

were subject to being attached pre-judgment, the FDCPA was violated even if the letter

"can reasonably be read to have two or more different meanings, one of which is

inaccurate." *Brown v. Card Service Center,* ___ F.3d ___, 2006 WL 2788476 (3rd Cir.,

Sept. 29, 2006), quoting *Wilson v. Quadramed Corp.,* 225 F.2d 3500, 354 (3rd Cir. 2004).

*See Russell v. Equifax, A.R.S.,* 74 F.3d 30, 36 (2nd Cir. 1996)(letter deceptive under the

FDCPA "[b]ecause [it] was reasonably susceptible to an inaccurate reading," i.e., the

language in question "advances a message that is open to an inaccurate yet reasonable

interpretation by the consumer, and is therefore deceptive as a matter of law"); *Sparkman*

*v. Zwicker & Associates, P.C.,* 374 F.Supp. 2d 293, 302 (E.D.N.Y. 2005)("with respect to

the level of attorney involvement in the collection of plaintiff's debt the Collection Letter

may reasonably be read to have two different meanings, only one of which can be

accurate. . . it is deceptive as a matter of law."); *Gionis,,* 405 F.Supp.2d at 866-867

(S.D.Ohio 2005)(summary judgment granted against law firm since least sophisticated

consumer "would be confused" about whether attorney's fees could be recovered in

collection suit).

     Tellingly, defendants' memorandum actually *supports* plaintiff's position.  The

following excerpt is illustrative:

> When the whole paragraph is considered the only
> reasonable reading of the letter is that: (1) GOS would
> institute legal proceedings unless the recipient took
> one of the steps indicated; (2) GOS expected that it

> would obtain a judgment and execution in any such
> action; and (3) *if GOS obtained a judgment and exe-*
> *cution*, it would seek to satisfy the judgment by attach-
> ing the recipient's property, bank account and wages,
> as necessary.

Def.Mem., 6. (emphases added).   The problem for defendants, as should be obvious, is

that – unlike the above – the subject letter simply does not contain language which even

remotely suggests that the possibility of a wage attachment was somehow limited to post-

judgment proceedings. Indeed, to the contrary, the letter states only that GOS could seek

a wage attachment "as shall be necessary to satisfy the judgment and execution which our

client *expects to obtain* against you," i.e., in the future. (emphases added)  Defendants'

interpretation therefore requires a fundamental re-writing of the letter, as they implicitly

acknowledge.[4]

Defendants' fanciful reading of the letter eventually collapses in the face of

reality.  Further along in their opposition, they assert:  "Here, there is only one reasonable

interpretation – that GOS would seek an attachment as necessary to satisfy the judgment

it expected to obtain."  Def.Mem., 6.  This language mirrors that of the letter itself almost

exactly, and states not that an attachment could be sought to satisfy a judgment *once it*

*has been obtained,* but rather a judgment which at the time the letter was written

defendants *expected to obtain,* i.e., as the end result of litigating the collection action.

---

[4] As noted in Mr. Kemp's motion for partial summary judgment, another version of the letter which would not be unlawfully deceptive would read:

> . . . we shall institute legal proceedings and, pending court
> approval, may make such attachment of your property as
> shall be necessary to satisfy the judgment which our client
> expects to recover, and, following entry of judgment, may
> attach non-exempt wages with court approval.

Faced with the realization that the letter means exactly what it says, defendants have become ensnared in their own net.

Because it is self-evident that the letter creates "[an] overall misleading impression," it is deceptive as a matter of law. *Aspinall,* 442 Mass. at 395. At a minimum, there is a genuine issue of material fact as to the letter's compliance with chapter 93A.

## II. THE "LITIGATION PRIVILEGE" DEFENSE HAS BEEN WAIVED AND IS IN ANY EVENT INAPPLICABLE TO PLAINTIFFS' CLAIMS UNDER G.L. c. 93A.

Defendants' argument that the "litigation privilege" immunizes them from liability under chapter 93A is utterly without foundation.

The "litigation privilege" is an affirmative defense subject to the pleading requirements of Rules 8(c) and 12(b). *See Arista Records v. Mp3Board, Inc.,* 2002 WL 1997918 *16 (S.D.N.Y., Aug. 29, 2002). As such, it "must be asserted in the first responsive pleading or [is] waived." *Reyes v. Supervisor of Drug Enf. Ad.,* 834 F.2d 1093, 1096 (1st 'Cir. 1987). An affirmative defense which has not been properly raised should not be considered for the first time on summary judgment. *See Giese v. Pierce Chemical Co.,* 43 F.Supp.2d 98, 113 (D.Mass. 1999).

Even if not waived, the litigation privilege does not apply here. The privilege derives from section 586 of the Restatement of Torts, which posits that allegedly false or defamatory statements made in connection with pending or contemplated judicial proceedings are entitled to protection, so as not to discourage participation and candor. *See Sribert v. Raymond,* 370 Mass. 105, 108-109 (1976) (adopting section 586 as the public policy of the Commonwealth). While it has been applied to a variety of claims

based on such statements,[5] the present action stands on a very different footing given the specific rights and remedies created by chapter 93A.  *See Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 693 (1975)(recognizing that chapter 93A "is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights"); *Neitlich v. Amica Mut. Ins. Co.,* 7 Mass.App.Ct. 661, 664 (1979)(noting the "broad remedial provisions" of chapter 93A).  Cases are legion holding that the litigation privilege does not bar statutory claims such as those available under chapter 93A.  *See,* e.g., *Blevins v. Hudson & Keyse, Inc.*, 395 F.Supp.2d 655 (S.D.Ohio, 2004)(FDCPA claim against attorney not protected by litigation privilege); *Irwin v. Mascott,* 112 F.Supp.2d. 937, 962-963 (N.D.Cal. 2000) (same); *Martinez v. California,* 444 U.S. 277, 284 n. 8 (1980)(state law immunity not a defense to civil rights claim under 42 U.S.C. §1983); *Nix v. O'Malley,* 160 F.3d 343 (6th Cir. 1998)(attorneys not immune from civil liability under the federal wiretap statute and similar state law).  Here, where defendants' liability under chapter 93A is based, *inter alia,* on violations of federal and state debt collection statutes which both cover attorney conduct – to wit, the FDCPA and G.L. c. 93, §49 -  the litigation privilege clearly has no place.  In sum, defendant's position is wholly without merit, and acceptance of it would, with respect to debt collection practices in the Commonwealth, "transmute a basic guarantee into an illusory promise."  *Manjivar v. Trophy Properties IV DE, LLC,* 2006 WL 2884396 *15 (N.D. Cal., Oct. 10, 2006), quoting *Kimes v. Stone,* 84 F.3d 1121, 1127 (9th Cir. 1996).

_____

[5] *See,* e.g., *Frazier v. Bailey,* 957 F.2d 920, 932 (1st Cir. 1992)(physician held immune from claims of negligence, intentional infliction of emotional distress, and civil rights violations based on statements made during divorce and criminal proceedings).

For the above reasons, defendants are not entitled to summary judgment on the basis of the "litigation privilege" defense.

### III.  THE MISREPRESENTATION OF DEBT AS ALLEGED IN COUNTS II AND VII CAUSED INJURY WHICH IS COGNIZABLE UNDER G.L. c. 93A.

Defendants contend – assuming *arguendo* they misrepresented the amount of the alleged debt in the November 17, 2003 letter and Superior Court complaint – that plaintiffs cannot establish they suffered an injury which is cognizable under G.L. c. 93A. Defendants' position is at odds with well-established principles of Massachusetts law.

Section 9 of G.L. c. 93A creates a cause of action to any person "who has been injured" as a result of an unfair or deceptive act or practice.   In a series of decisions, the Supreme Judicial Court has made clear that the term "injury" as used in section 9 is not limited to a "loss of money or property" or the infliction of "emotional distress," as defendants urge.[6]   To the contrary, as was demonstrated in Kenneth Kemp's motion for partial summary judgment, an injury within the purview of section 9 is caused by the invasion of any "legally protected interest."  Thus, in *Leardi,* the Court held an injury was caused by the inclusion in residential lease agreements of several provisions which violated the state sanitary code, emphasizing the principle that "'there may be injury although no harm is done.'" 394 Mass. at 159-160, quoting *Restatement (Second) of Torts,* §7, comment a (1965).   And, in *Aspinall,* the Court ruled that plaintiffs' allegations were sufficient to establish injury under section 9 because defendant's deceptive advertising "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"  442 Mass. at 394,

---

[6] Indeed, section 9 was amended in 1979 to specifically not require a tangible loss.  Previously, the statute could only be invoked by persons who "suffer[ed] any loss of money or property, real or personal."

quoting *Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 777 (1980).   As the Court explained:  [T]he deceptive advertising, as alleged by the plaintiffs in this case, if proved, effected a per se injury on consumers who purchased the cigarettes represented to be lower in tar and nicotine.  *Id.* at 402.

Massachusetts law establishes unequivocally that the misrepresentation of the amount of an alleged debt constitutes the invasion of a consumer's legally-protected interest and therefore runs afoul of G.L. c. 93A.  First, a regulation promulgated by the Commissioner of Banks and applicable to debt collectors such as defendants[7] - 209 CMR 18.16 – provides in pertinent part:

> 209 CMR 18.16: False or Misleading Representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of 209 CMR 18.16:
> .   .   .   .   .
> *(2) The false representation of:*
> *(a) the character, amount, or legal status of any debt;*

(emphases added)  Second, a regulation promulgated by the Attorney General pursuant to G.L. c. 93A, §2(c) states:

> 940 CMR 7.07: General Deceptive Acts or Practices
>
> It shall constitute a deceptive act or practice to engage in any of the following practices:
> .   .   .   .   .
> (2) Any knowingly false or misleading representation in any communication as to the character, extent or amount

---

[7]"Debt collector" is defined as "any person . . . who regularly collects or attempts to collect, directly or indirectly, a debt owed or due or asserted to be owed or due to another."  209 CMR 18.02.  Defendants do not dispute in their motion or cross-motion that they are not debt collectors, and in its answer GOS admitted that it "is engaged in the business of collecting debts in Massachusetts."  Answer, ¶2.

of the debt;[8]

And, still another Attorney General regulation – 940 CMR 3.16 - decrees that a violation of the Federal Consumer Credit Protection Act (of which the FDCPA is a part) constitutes a *per se* violation of G.L. c. 93A, §2, and the FDCPA prohibits the misrepresentation of debt:

> 15 U.S.C. §1692e.  False or misleading representations.
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> .   .   .   .   .   .
> *(2) The false representation of –*
>    *(A) the character, amount, or legal status of any debt;*

(emphases added)  It therefore cannot be doubted that the violations alleged in Counts II and VII, if proven, caused injury to plaintiffs within the meaning of G.L. c. 93A, §9 as a matter of law.  As shown, the absence of physical, emotional, or financial damage is irrelevant.  Moreover, defendants' position flies in the face of section 9's command that a consumer be awarded statutory damages in the event actual damages are not established at trial: "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater."  *See Aspinall,* 442 Mass. at 400 ("In the event that the plaintiffs are unsuccessful in their attempt to prove actual damages, however, they will be entitled to recover statutory damages under G.L. c. 93A, §9(3)).

   *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.,* 445 Mass. 790 (2006)*,* is not to the contrary.  *Hershenow* was a class action seeking statutory damages under section 9 due to the presence of certain provisions in rental car agreements which did not

---

[8] This regulation also applies to defendants, who are "attorneys engaged in collecting a debt owed or alleged to be owed to a [creditor] by a debtor."   940 CMR 7.03.

comply with Massachusetts law.  The Court concluded that, standing alone, the misrepresentations of law in the contract could not cause the renters to act differently than they otherwise would have and so did not cause an injury within the scope of section 9.[9]  The differences from the case at bar are substantial.  First, unlike the debt collection statutes and regulations which apply to defendants here, the law at issue in *Hershenow* – G.L. c. 90, §32E-1/2 – does not state or suggest that a violation would constitute an unfair or deceptive trade practice, does not provide for the promulgation of regulations, and does not even provide for a private right of action.  And, second, the misrepresentation of the amount of an alleged debt – unlike the contract provision in *Hershenow* - could certainly affect the behavior of a reasonable consumer by, for example, inducing him (or her) to pay an incorrect amount.

Accordingly, defendants are not entitled to summary judgment on the basis that plaintiffs were not injured as a result of the misconduct alleged in Counts II and VII of the SAC.

## IV.  COUNT I IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

Defendants argue that plaintiffs' FDCPA claim alleging GOS misrepresented the amount of the alleged debt in the Superior Court complaint filed on July 23, 2004, is outside the statute of limitations.  Defendants do not dispute that the present action was brought within the one-year FDCPA limitations period, but rather contend that the

---

[9] In this regard, the *Hershenow* plaintiffs were different from the plaintiff tenants in *Leardi,* since the unlawful lease provision "would deter tenants from exercising their legal rights on pain of loss of their tenancy. . . ."  *Id.*  In a similar vein, they were different from the cigarette purchasers in *Aspinall* because the deceptive advertising to which light cigarette smokers were subjected "'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"  *Id.* at 801, quoting *Aspinall,* 442 Mass. at 394.

misrepresentation somehow "relates back" to the demand letter of November 17, 2003. This position, albeit creative, is groundless.

First, the November, 2003 demand letter was directed to Kenneth Kemp only, and there is no allegation or indication that defendants communicated in any fashion with Christine Kemp prior to the filing of the Superior Court complaint, much less made any monetary demand on her. Robbins Aff., Ex. A. Accordingly, the statute of limitations argument does not apply to Christine Kemp's claim and summary judgment is therefore unwarranted as to her.

Second, the amount claimed in the demand letter to Mr. Kemp ($18,481.83) was not the same as that sought against him in the complaint ($18,360.96), thus destroying any conceivable link.

Third, case law cited by defendants actually supports plaintiffs. In *Fraenkel v. Messerli & Kramer, PA.,* 2004 WL 1765309 (D.Minn. July 29, 2004), plaintiffs did not base their FDCPA claim against the defendant law firm on any specific misrepresentation made in the state court complaint. Rather, they alleged solely that the Act was violated due to "defendant's demand for attorneys' fees, which plaintiffs claim is not authorized by the credit agreement/Cardmember agreement." *Id.* at *3. In other words, plaintiffs asserted a general, catch-all claim that defendant's attempts to recover attorney's fees was unlawful, regardless of the form it took. Thus, since defendant's first attempt to collect occurred more than one year prior to the filing of the complaint, the Court properly found that it was time-barred. Here, by contrast, plaintiffs specifically allege that the Superior Court complaint and the previous demand letter were two separate communications, each of which violated the FDCPA. In *Calka v. Kucker, Krause &*

*Bruh, LLP,* 1998 WL 437151 (S.D.N.Y. Aug. 3, 1998), the Court found that an amended collection complaint filed in state court was time-barred because it "contained [no] new misrepresentation of the amount due not in the original complaint," and the original complaint was filed outside the statute.  As shown, the situation in the present case is just the opposite, where the original complaint is at issue and different amounts were alleged in the complaint and the earlier demand letter.  Finally, *Deaville v. Capital One Bank,* 425 F.Supp.2d 744 (W.D.La. 2006), simply stands for the non-controversial proposition that a cause of action for misrepresentation under the FDCPA accrues when the misrepresentation is made, not when it is affirmed by the debt collector following the sending of a dispute letter by the consumer.[10]

Fourth, defendants' final argument – that "Kemp knew or should have known what he owed" (Def.Mem. 12)  – simply has no place in FDCPA jurisprudence.  As discussed at pp. 8 – 9, *infra,* the FDCPA is a strict liability statute, and the objective "least sophisticated consumer" test for determining liability controls regardless of what the plaintiff actually understood or may have believed.  Indeed, even the fact that an FDCPA plaintiff may be an attorney "does not alter the application of [this] standard."

---

[10] Another case relied on by defendants - *Kirscher v. Messerli & Kramer, P.A.,* 2006 WL 145162 (D.Minn. Jan. 18, 2006) - is not only easily distinguished from the case at bar, but also appears to have been wrongly decided.  Defendant law firm brought a collection action against plaintiff in state court on behalf of Discover Bank.  Plaintiff filed an offer of judgment, and defendant filed an acceptance of the offer after the ten-day period allowed for acceptance by the applicable rule of procedure.  When plaintiff disputed that defendant had made a timely acceptance of the offer, defendant wrote to plaintiff contending that the acceptance was timely.  Plaintiff's federal court complaint alleged – *inter alia* – that this  letter violated the FDCPA because it misrepresented that defendant's acceptance of the offer of judgment had been timely.  However, the Court found the claim to be time-barred because plaintiff had notice at the time defendant accepted the offer that it had come too late.  This decision appears to be erroneous, since the FDCPA violation claimed by plaintiff was not defendant's late acceptance of the offer, but rather defendant's subsequent misrepresentation that its acceptance had been timely.  The Court's statement that upon first receiving the late acceptance "Kirscher was notified of the misrepresentation involving the offer's validity" is simply not in accord with the facts.  *Id.* at *3.  Even if decided correctly, however, this decision does not help defendants since, as explained, the alleged misrepresentation in the Superior Court complaint was materially different from that in the demand letter.

*Johnson v. Equifax Risk Mgmt. Servs.,* 2004 WL 540459*4 n. 16 (S.D.N.Y. Mar. 17, 2004).  Similarly, factual questions which may have significance in other contexts are irrelevant here, such as whether an improper communication was actually received or read,[11] whether plaintiff suffered actual harm,[12] whether plaintiff relied on the communication,[13] and whether the alleged debt is legitimately owed.[14]

      For the above reasons, therefore, defendants are not entitled to summary judgment on Count I of the SAC.

**V.**  **ANY DEFENSE BASED ON "BONA FIDE ERROR" HAS BEEN WAIVED; IN ANY EVENT, THE DEFENSE IS INAPPLICABLE TO COUNTS III, IV, AND V OR, IF APPLICABLE, ENTAILS FACTUAL QUESTIONS WHICH PRECLUDE SUMMARY JUDGMENT**

      When GOS brought suit on the alleged debt in Middlesex Superior Court, it included in the complaint a claim alleging that Kenneth Kemp had fraudulently transferred real estate located at 9 Elizabeth Road, Billerica, to his wife, Christine Kemp. Even though Christine was not obligated on the alleged debt, GOS asserted that this transfer provided a basis for proceeding against her interest in that property and for asserting a separate claim for damages against her.  In the present case, plaintiffs claim that defendants "did not have a reasonable or good faith basis for the allegations against Kenneth Kemp with respect to his transfer of the property" (SAC, ¶11), and that the claim was only brought "to unfairly coerce payment on the [alleged debt] by threatening action against the property and by making Christine Kemp a defendant in the lawsuit." SAC, ¶12.  Plaintiffs contend that this conduct on the part of defendants constituted an

---

[11] *See,* e.g., *Irwin v. Mascott,* 186 F.R.D. 567 (N.D.Cal. 1999).

[12] *See,* e.g., *Pettway,* 2005 WL 2365331 at *3.

[13] *See,* e.g., *Ditty v. Check Rite, Ltd.,* 182 F.R.D. 639 (D.Utah 1998).

[14] *See,* e.g., *Pettway,* 2005 WL 2365331 at *3.

unfair and/or unconscionable means of attempting to collect a debt in violation of 15

U.S.C. §1692f (Count III); constituted conduct the natural consequence of which was to

harass, oppress, or abuse plaintiffs in violation of 15 U.S.C. §1692d (Count IV), and

involved the use of false and deceptive means in connection with the attempted collection

of the debt in violation of 15 U.S.C. §1692e.(Count V).  Defendants argue that even if

plaintiffs' allegations are true, they are shielded from liability as a matter of law by the

"bona fide error" defense.  Defendants' position is utterly without merit and must be

rejected.

The threshold problem for defendants is that the bona fide error defense is an

affirmative defense which defendants were required to plead, but did not; accordingly, it

has been waived.  *Berndt v. Fairfield Resorts, Inc.,* 337 F.Supp.2d 1120, 1133

(W.D.Wis. 2004); *Shapiro v. Haenn,* 222 F.Supp.2d 29, 42 (D.Me. 2002); *Shula v.

Lawent,*  2002 WL 31870157 *11 (N.D.Ill. Dec. 23, 2002).   Courts recognize that an

affirmative defense which has not been asserted in defendants' responsive pleading

should not be considered for the first time on summary judgment.  *See Giese,* 43

F.Supp.2d at113.  While the Court has discretion to excuse the failure to raise an

affirmative defense if there is no prejudice to plaintiff, such action would not be fair or

appropriate here since defendants had 3 attempts to raise the defense (the complaint

having been amended twice), and discovery has long since closed.

However, even assuming *arguendo* that the Court sees fit to consider the defense,

it does not help defendants since "the bona fide error defense applies only to clerical

errors."  *In re Maxwell,*  281 B.R. 101, 118 (D. Mass. 2002), quoting *Smith v. Transworld

Systems, Inc.,* 953 F.2d 1025, 1034 (6th Cir. 1992) and *Baker v. G.C. Services Corp.,* 677

F.2d 775, 779 (9th Cir. 1982). *See,* also, *Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446 (8th

Cir. 2001)(rejecting application of bona fide defense to errors in legal judgment). *But*

*see Shapiro v. Haenn*, 222 F.Supp.2d 29, 43 (D.Me. 2002)(adopting position of Tenth

Circuit that bona fide defense applies to errors of legal judgment, and noting that "[t]he

First Circuit has not weighed in on the debate."). Its purpose "'is to protect debt

collectors from inadvertent clerical errors' such as the miscoding of data into a computer

system." *Wilhelm v. Credico, Inc.,* 426 F.Supp.2d 1030, 1038 (D.N.D. 2006)(citation

omitted). Here, by contrast, the claims asserted in Counts III, IV, and V of the SAC all

arise from the erroneous (and allegedly bad faith) exercise of legal judgment. To be sure,

the alleged misconduct by defendants is not remotely of the clerical or ministerial type

that the "procedures" mentioned in 15 US.C. §1629k(c) could effectively address.

*Compare,* e.g., *Hyman v. Tate,* 362 F.3d 765 (7th Cir. 2004)(procedures to avoid

contacting debtors who had filed bankruptcy); *McDaniel v. South & Assoc., P.C.,* 325

F.Supp.2d 1210 (D.Kan. 2004)(procedures to avoid continuing collection activity after

receipt of debtor's dispute letter); *Gill v. Kostroff,* 82 F.Supp.2d 1354 (M.D.Fla.

2000)(procedures to avoid bringing suit against wrong debtor).

　　　　Finally, even if defendants can invoke the bona fide error defense, they still

cannot prevail because they have not met their Rule 56 burden of showing the lack of a

genuine issue of material fact as to all required elements – whether the alleged error was

"made in good faith, inadvertently, without fraud or deceit, and with faithfulness to one's

duty or obligation" (*Bynum v. Cavalry Portfolio Servs., LLC,* 2006 WL 850935*4

(N.D.Okla. Mar. 30, 2006)), and whether it occurred in spite of procedures "reasonably

adapted to avoid any such error." *15 U.S.C. §1692k(c).* Defendants' core argument is

that they had a basis for alleging a fraudulent transfer because Kenneth Kemp was

insolvent at the time.  Their purported basis for alleging insolvency was a credit report

which showed 3 delinquent charge accounts and the provision of Massachusetts law

providing that a person "who is generally not paying his debts as they become due is

presumed to be insolvent."  Def. Mem., 13.  However, the delinquencies had occurred

years before (Robbins Aff., Ex. C), and upon being shown the actual credit report

Attorney Book admitted that it showed 9 other accounts which were current or paid in

full.  Book Depo, pp 40-47 (Quat Aff., Ex. D).[15]   Attorney Book further admitted that he

had no knowledge as to whether Mr. Kemp was behind in any utility payments or any

other debts not reflected on the credit report.  Book Depo, pp. 44, 46-47 (Quat Aff., Ex.

D).  And, most tellingly, when asked about the status of Mr. Kemp's mortgage payments

– for most consumers, the most important and substantial debt ever incurred – Attorney

Book stated: "I honestly do not know, nor did I feel it that significant."  Book Depo, p. 46

(Quat Aff., Ex. D).  Consequently, it is clear that not only was Mr. Kemp *not* insolvent as

defined by Massachusetts law at the time of the transfer, but moreover, Attorney Book

knew that to be the case.  Thus, assuming *arguendo* that the bona fide defense even

applies, and resolving all inferences in plaintiffs' favor, clear issues of fact exist as to

whether defendants' alleged misconduct was unintentional and whether better procedures

to obtain and analyze financial information should have been employed.  Furthermore,

there is a far more troubling question as to whether - given Mr. Kemp's true financial

situation and Attorney Book's cavalier attitude - defendants' error was bona fide: "[a]

bona fide error is an error made in good faith; a genuine mistake, as opposed to a

---

[15] These current or paid-up debts were those to American Honda; Citi Financial, First Nationalwide,
Americredit; Fleet; J.C.Penny; National Tire; Dovenmuhl Mortgage; and U.S. Trust.  Robbins Aff., Ex. C;
Book Depo, pp. 40-47 (Quat Aff., Ex. D)

contrived mistake." *Ross v. RJM Acquisitions Funding, LLC,* 2006 WL 752953 *6

(N.D.Ill. Mar. 16, 2006). Because these questions "[hold] the potential to change the

outcome of the case," summary judgment cannot enter. *Barnstable School Committee,*

2006 WL 2949110 at *3. *See Bell v. Bowman, Heintz, Boscia & Vician,* P.C., 370

F.Supp.2d 805, 812 n. 5 (S.D.Ind. 2005)(evidence that collector took action to collect

debt with knowledge or reason to know that information was incomplete creates issue of

fact precluding summary judgment); *Piper v. Portnoff Law Associates***,** 274 F.Supp.2d

681, 688-689 (E.D.Pa. 2003)(intentional exclusion of required language from collection

letter negated bona fide error defense and warranted summary judgment for plaintiffs).

In sum, "as is typical with affirmative defenses, the decision is one that a jury and not the

court must make." *Pettway,* 2005 WL at 2365331*6.[16]

---

[16] Attorney Book also testified at his deposition that, in his opinion, Kenneth Kemp was insolvent at the time of transfer for the additional reason that his debts exceeded his assets. Book Depo, p. 34 (Quat Aff., Ex. E). Defendants do not rely on this argument in seeking summary judgment; nonetheless, it should be noted that this conclusion was also predicated on the basis of grossly inadequate and suspect information. The following colloquy occurred:

> Q.  Is it far to say that prior to the transfer, Mr. Kemp owned a piece
>     of property with his wife at 9 Elizabeth Road in Billerica?
> A.  And he had equity in it.
> Q.  I want to make sure. Were you aware of any other assets in which he had an interest
>     at the time of the transfer of that property?
> A.  No.
>
>                 .    .    .    .    .    .
>
> Q.  In the course of drafting the Complaint that is Exhibit A to Exhibit 1, did you do any
>     addition or mathematical computations to compare the value of Mr. Kemp's assets
>     to his debts?
>
>                 .    .    .    .    .    .
>
> A.  Is the answer to my question no?
> Q.  No. Sure.

Book Depo, pp. 35-37 (Quat Aff., Ex. E).

## Conclusion

For all the above reasons, as well as those set forth in plaintiff Kenneth Kemp's memorandum of law in support of partial summary judgment, defendants' motion and cross-motion for summary judgment should be denied, and Kenneth Kemp's motion for partial summary judgment should be granted.

## ORAL ARGUMENT REQUESTED

Plaintiffs request that the Court hold oral argument on defendants' motion and cross-motion for summary judgment, as well as on plaintiff Kenneth Kemp's motion for partial summary judgment. Plaintiffs believe that oral argument will be helpful to the Court in elucidating the issues raised on these potentially dispositive motions.

/s/Kenneth D. Quat
Attorney for Plaintiffs
BBO 408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848