UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH KEMP,
On behalf of himself and all others similarly situated, and
CHRISTINE KEMP,
    Plaintiffs,
v.

GANICK, O'BRIEN & SARIN, Attorneys at Law, LAWRENCE E. O'BRIEN, JR., d/b/a GANICK, O'BRIEN & SARIN, Attorneys at Law, and DOES 1-5,
    Defendants.

CIVIL ACTION NO. 05-11516-GAO

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF KENNETH KEMP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND THEIR CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants Ganick, O'Brien & Sarin and Lawrence E. O'Brien, Jr., d/b/a Ganick, O'Brien and Sarin (collectively, "GOS") submit the following reply to Plaintiffs' Opposition to Defendants' Motion and Cross-Motion for Summary Judgment ("Opp.").

**I.  THE WORD "PRE-JUDGMENT" DOES NOT APPEAR IN THE NOVEMBER 17, 2003 DEMAND LETTER.**

Plaintiffs assert throughout their Opposition that the November 17, 2003 letter sent by GOS to plaintiff Kenneth Kemp ("Kemp") conveys the "unmistakable" message that GOS might seek a pre-judgment attachment of Kemp's wages. Opp. 5-10. Indeed, plaintiffs use the word "pre-judgment" no less than five times in describing the message allegedly conveyed by the November 17, 2003 letter. *Id.* In fact, however, the word "pre-judgment" appears nowhere in the letter. Further, the letter makes no reference to holding or securing the property pending the outcome of the legal proceedings, as would be natural if the letter referred to pre-judgment security.[1]

---

[1] The critical portion of the letter states:

250477_1.DOC

## II. THE "LEAST SOPHISTICATED CONSUMER" STANDARD DOES NOT APPLY TO PLAINTIFFS' C. 93A CLAIMS.

Plaintiffs incorrectly contend that in construing the November 17, 2003 letter, the Court should apply the "least sophisticated consumer" standard, used under the Fair Debt Collection Practices Act ("FDCPA"). Opp. 8-10. Any claims under the FDCPA based on the November 17, 2003 letter would be time-barred, because plaintiffs did not bring suit until July 19, 2005. That is precisely why the only FDCPA claims asserted by plaintiffs are based on the Superior Court complaint filed against the Kemps. Plaintiffs, who failed to file their suit within one year of the November 17, 2003 letter, should not be permitted to "morph" their c. 93A claims into FDCPA claims.

## III. THE LITIGATION PRIVILEGE WAS NOT WAIVED.

Plaintiffs argue that GOS is barred from asserting the litigation privilege as a defense to plaintiffs' c. 93A claims (Counts II, VI, VII and VIII) because it was not pled as an affirmative defense. Opp. 12. Plaintiffs err, for two reasons. First, there is no Massachusetts case holding that the litigation privilege is an affirmative defense that is waived if not pled. The sole case cited by plaintiffs to support this point, *Arista Records v. Mp3Board, Inc.*, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002), applies California law. Second, even were the litigation privilege recognized under Massachusetts law as an affirmative defense, the Court may excuse the failure to plead it "[w]here . . . a plaintiff clearly anticipates that an issue will be litigated, and is not unfairly prejudiced when the defendant actually raises it." *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st Cir. 1995). Here, the defendants explicitly invoked the litigation privilege when they

---

Therefore, unless we hear from you within 30 days of the date of this letter, or you make satisfactory arrangements to pay this claim, we shall institute legal proceedings and, pending court approval, may make such attachment of your property, bank account or wages, as shall be necessary to satisfy the judgment and execution which our client expects to obtain against you.

responded to plaintiffs' pre-suit c. 93A demand letter, which is part of the summary judgment record.[2] Plaintiffs therefore had ample notice that the applicability of the litigation privilege to their c. 93A claims would be in issue and are not prejudiced by the Court's consideration of the defense.

### IV. THE LITIGATION PRIVILEGE APPLIES TO C. 93A CLAIMS.

Plaintiffs also wrongly assert that the litigation privilege does not apply to claims under c. 93A. Opp. 12-13. Plaintiffs do not cite a single Massachusetts case for this proposition, nor do they even attempt to reconcile their position with the First Circuit's statement that the privilege is "a general bar to civil liability based on the attorney's statements." *Blanchette v. Cataldo*, 734 F.2d 869, 876 (1st Cir. 1984) (citing *Sullivan v. Birmingham*, 11 Mass. App. 359, 368, 416 N.E.2d 528, 533 (1981)).

The cases cited by plaintiffs, in addition to being from outside of Massachusetts, are inapposite. Plaintiffs' cases merely hold that the litigation privilege does not apply to *federal* claims (a point that the defendants do not contest, for the purposes of this motion).[3] Plaintiffs' citation of *Manjivar v. Trophy Properties IV DE, LLC*, 2006 WL 2884396 *15 (N.D. Cal. Oct. 10, 2006) for the proposition that application of the litigation privilege to c. 93A claims would "transmute a basic guarantee into an illusory promise" is especially misleading. The full sentence addresses only the application of state law immunity to *federal* claims. It reads, "A construction of the *federal* statute which

---

[2] A copy of the defendants' response is attached as Exhibit I to the Affidavit of Kenneth D. Quat, Esquire, in Support of Kenneth Kemp's Motion for Partial Summary Judgment. The response states "As to your claim for violation of state statute [based on the filing of the Superior Court complaint, I call your attention to the absolute privilege, which attaches to statements made by attorneys involved [in] litigation or preliminary to litigation." In regard to the November 17, 2003 letter, the defendants' c. 93A response states, "As this letter was forwarded preliminary to litigation, the privilege under state law as described above, also attaches."

[3] Although *Nix v. O'Malley*, 160 F.3d 343 (6th Cir. 1998), held that the Ohio litigation privilege did not bar claims brought against attorneys under a state wiretap statute as well as the federal statute for disclosing information in violation of the statutes, that case is factually and legally distinguishable. The state wiretap statute specifically addressed permitted disclosures, and the Ohio courts, unlike the Massachusetts courts, have limited the litigation privilege to defamation claims. *Id.* at 352-53.

3

permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Id.*

## V. PLAINTIFFS CANNOT SHOW ANY HARM FROM THE ALLEGED C. 93A VIOLATIONS THAT FORM THE BASIS FOR COUNTS II AND VII.

As set forth in its brief, GOS is entitled to summary judgment on plaintiffs' c. 93A claims for GOS's alleged inclusion of collection costs and attorney's fees in the amount stated as due without indicating that those items were included (Counts II and VII) for the additional reason that even if collection costs and attorney's fees had been included (which is not the case) plaintiffs could show any harm resulting from the alleged conduct. Plaintiffs allege that they suffered emotional distress, but that distress was due to the amount Kemp owed, not the alleged inclusion of collection costs and attorney's fees in the amount. Kemp Dep. (Robbins Aff., Ex. F) 106:2 – 106:10. Faced with the impossibility of establishing the required causal connection, plaintiffs argue that they were injured as a matter of law, because the alleged actions would violate various Massachusetts regulations. Opp. 15-16. The Massachusetts Supreme Judicial Court rejected precisely this argument in *Hershenow v. Enterprise Rent-a-Car Co.*, 445 Mass. 790 (2006). The *Hershenow* Court made clear that even if an act may be deemed unfair or deceptive as a matter of law because it fails to comply with consumer protection statutes, rules, regulations or laws, plaintiff still must show that the action caused a loss:

> As noted earlier, plaintiffs rely on 940 Code Mass. Regs. § 3.16(3), which defines unfair or deceptive acts or practices and provides that an act that "fails to comply with" existing consumer protection statutes, rules, regulations, or laws is a "violation" of G.L. c. 93A, § 2. . . . Their reliance is misplaced. Our decision today is consistent with that regulation. An act that violates a consumer statute may be per se deceptive under G.L. c. 93A, § 2, as the regulation implies. That does not make it per se an injury under G.L. 93A, § 9, as the plaintiffs argue. Id. at 533 n.17.

4

Nor does this case fall within *Leardi v. Brown*, 394 Mass. 151 (1985), as plaintiffs argue. Opp. 14. The key in *Leardi* was that the conduct that violated c. 93A would deter plaintiffs from exercising their legal rights. See *Hershenow*, 445 Mass. at 800. Plaintiffs have not explained, nor can they, how GOS's alleged inclusion of attorney's fees and collection costs in the amount stated as due (even had that in fact occurred) would deter them from exercising their rights under the FDCPA and Massachusetts consumer protection laws.

## VI. THE FACT THAT THE NOVEMBER 2003 LETTER AND THE SUPERIOR COURT COMPLAINT STATED A DIFFERENT AMOUNT DUE IS IRRELEVANT TO WHETHER COUNT I IS TIME-BARRED.

Count I of plaintiffs' Second Amended Complaint is for GOS's alleged inclusion of collection costs and attorney's fees in the amount stated as due in the July 2004 complaint. As set forth in its initial brief, Count I accrued in November 2003 (more than a year before plaintiffs filed suit), when GOS allegedly committed precisely the same offense in its November 17, 2003 letter to Kemp.

Plaintiffs conclusorily dismiss GOS's argument by stating that the amount stated as due in the November 17, 2003 demand letter and the amount stated as due in the Superior Court complaint were different.[4] Opp. 18-19. That is irrelevant. The demand letter and the Superior Court complaint were directed at the collection of the same debt. Further, plaintiffs' complaint is not about the amount of the debt, but GOS's alleged inclusion (which GOS adamantly denies) of collection costs and attorney's fees in the amount stated as due. This case thus falls squarely within the cases cited at pages 11-12 of GOS's initial memorandum, which recognize that a new communication regarding an old claim does not restart the statute of limitations.

---

[4] The amount changed because GOS's client discovered that the incorrect interest rate had been used. Affidavit of Lawrence E. O'Brien, ¶ 7. Also, because the Superior Court complaint was filed several months after the demand letter was sent, additional interest was due.

## VII. THE "BONA FIDE ERROR" DEFENSE IS NOT WAIVED.

Plaintiffs assert that GOS is barred from asserting a "bona fide error" defense to plaintiffs' FDCPA claims arising from GOS's filing of an allegedly "baseless" fraudulent transfer claim (Counts III, IV and V) because GOS did not plead the defense as an affirmative defense. Opp. 21. Plaintiffs assert that the defense requires a showing that the alleged error was made in good faith, inadvertently, without fraud or deceit, and with faithfulness to one's duty or obligation, as well as the implementation of procedures reasonably adapted to avoid such errors. Opp. 22. The pleadings in this case clearly put plaintiffs on notice that the defendants might argue that they had a reasonable and good faith basis for asserting the fraudulent transfer claim. Plaintiffs specifically alleged in their Second Amended Complaint that GOS did not have a "reasonable or good faith basis" for alleging that: (i) Kemp transferred the property at issue while he was insolvent; (ii) Kemp did not receive reasonable consideration for the conveyance; and (iii) the transfer was fraudulent. GOS denied these allegations. That denial thus placed the basis for GOS's actions, and particularly its good faith and reasonableness, squarely in issue. See Seconded Amended Complaint, ¶¶ 10-11; Defendants' Answer to Plaintiffs' Second Amended Complaint, ¶¶ 10-11. The Court therefore may excuse GOS's failure to explicitly plead the bona fide error defense as an affirmative defense. *Williams*, 45 F.3d at 593.

## VIII. THE "BONA FIDE ERROR" DEFENSE APPLIES TO MISTAKES OF LAW.

Plaintiffs further contend that the "bona fide error" defense is limited to clerical mistakes and does not apply to mistakes of law. Opp. 21-22. As plaintiffs acknowledge, there is a division of authority on this point, and the First Circuit has not yet addressed the issue. The recent trend, however, is toward interpreting the "bona fide error" defense to apply to mistakes of law. *See Johnson v. Riddle*, 305 F.3d 1107,

6

1121-22 (10th Cir. 2002) (stating that "a growing minority" of courts have concluded that the defense protects mistakes of law and citing cases). Further, as explained in *Johnson*, the line of cases holding that the defense is limited to clerical mistakes traces back to the Ninth Circuit's decision in *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982). *Johnson*, 305 F.3d at 1122. The *Baker* decision rested "entirely" on the alleged similarity of the bona fide error defense under the FDCPA to the bona fide error defense under the Truth in Lending Act ("TILA"). *Johnson*, 305 F. 3d at 1122. As *Johnson* and other courts have now recognized, however, that analogy does not hold up, because TILA explicitly limits the bona fide error defense to clerical mistakes. *Johnson*, 305 F.3d at 1122. The FDCPA does no such thing. *Id.* The minority review therefore is the sounder view, and the one that the First Circuit likely will adopt.

## IX.   GOS RELIED ON MORE THAN KEMP'S CREDIT REPORT.

Plaintiffs incorrectly suggest that GOS's allegation in the Superior Court complaint that Kemp was insolvent was based entirely on Kemp's credit report, which showed that he had defaulted on three credit card debts. Opp. 23. While that was part of the information relied on by GOS, GOS was also aware that Kemp was an obligor on two mortgages, totaling $255,000, for the property that he conveyed to his wife for one dollar, and the credit report did not indicate that he had an ownership interest in any real property.

### Conclusion

For the reasons set forth above and in its initial memorandum, GOS respectfully requests that the Court: (i) deny plaintiff Kenneth Kemp's motion for partial summary judgment on liability on Count VIII of plaintiffs' Second Amended Complaint, and (ii) grant GOS's motion for summary judgment on all eight counts of plaintiffs' Second Amended Complaint.

GANICK, O'BRIEN & SARIN and
LAWRENCE E. O'BRIEN, d/b/a
GANICK, O'BRIEN & SARIN

By its attorneys,


/s/ Anne Robbins
J. Allen Holland (BBO #546892)
Anne Robbins (BBO #561968)
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA  02199-7613
(617) 951-0800


### CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by electronic means on December 7, 2006.

/s/ Anne Robbins


250477_1